# Pusey's Appeal.   In the matter of Charles Street.

1. Art. 16, sect. 8 of the Constitution secures an appeal and a trial by a jury for damages wherever private property is taken by a municipal corporation for public use, and the Act of Assembly of 13th June 1874 was intended to furnish the remedy secured to property owners. by this provision of the Constitution, and gave an appeal to the Court of Common Pleas where no sufficient regulation for a trial by jury already existed.

2. This constitutional provision applies to the assessment of benefits as well as of damages, by a jury.

3. Where on appeal to the Quarter Sessions of Allegheny county, the court appointed viewers to assess damages to P. by the opening of a street through his land, and, upon exception to their report by P., the report was set aside and a new view ordered, and P. appeared before the new viewers and pressed his claim for damages, and within thirty days after the filing of the new report demanded a jury trial in the Common Pleas : *Held* (reversing the court below), that under art. 16, sect. 8, of the Constitution (carried into effect by the Act of 13th June 1874), P. was entitled to a trial by a jury : *Held, also,* that P. had not waived his constitutional right by permitting the case to go before the last board of viewers without objections on his part.

November 10th 1876.   Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ.   WILLIAMS and MERCUR, JJ., absent.

Certiorari to the Quarter Sessions of *Allegheny county :* Of October and November Term 1876, No. 249.

[Pusey's Appeal.]

This was an appeal of William B. Pusey, for himself and his wife, in proceedings to open Charles street in the city of Allegheny. In March 1874, the city councils of Allegheny passed an ordinance for the opening of Charles street, and appointed viewers to assess damages and appraise benefits to the property owners. After the confirmation of their report by the councils, one Kimberlin took an appeal to the Quarter Sessions. The court appointed new viewers, and upon the filing of their report Pusey excepted thereto. This report was set aside, and the matter referred again to the same viewers. Pusey appeared before the viewers, under this reference, and pressed his claims for damages. The last report was filed September 11th 1875; on October 9th 1875, Pusey demanded a trial by jury and the record was ordered to be certified to the Court of Common Pleas, No. 2, for that purpose. Afterwards, on motion of the city solicitor of the city of Allegheny, a rule was granted on Pusey to show cause why this order should not be vacated, which was made absolute. In September 1876 this writ was taken, on the ground that the court erred in holding that Pusey had waived his right to a jury trial, and in revoking the order in which the case was certified into the Common Pleas for trial before a jury.

*J. S. & A. P. Morrison*, for the appellants.

*W. B. Rodgers*, city solicitor, *contrà*.

Chief Justice Agnew delivered the opinion of the court, January 2d 1877.

This was a proceeding under an ordinance of the city of Allegheny to open Charles street, brought into the Court of Quarter Sessions by an appeal from the report of viewers appointed by the councils of the city to assess damages and appraise benefits to the owners of the property along the route of the street. On the 9th of October 1875, William B. Pusey, for himself and his wife as owners, presented his petition for an appeal and for a jury trial to assess their damages; upon which the Court of Quarter Sessions made an order certifying the record of the case into the Court of Common Pleas, No. 2, for the trial of the appeal. Afterwards, upon a rule to show cause, taken by the city solicitor, the order allowing the appeal and certifying the record into the Court of Common Pleas, was revoked and vacated. The learned judge who vacated the order, did so on the ground that the Act of 13th June 1874, Pamph. L. 283, is inadequate to furnish the remedy by way of appeal and jury trial, applied for by Mr. Pusey; and on the ground also that he had waived his demand. This, we think, was an error. The Act of 1874 was intended to provide for the case and furnish the remedy secured to the owners of property, by the 8th section of the 16th article of the new Constitution. Indeed, the learned

[Pusey's Appeal.]

judge concedes this to be its purpose, but thought its provisions did not reach this case. A careful examination of the act leads us to a different conclusion. The first section of the act runs in the very words of the constitutional provision, describing the subject-matter provided for; and proves that the constitution was before the eye of the draftsman of the act. The third section refers to the constitutional provision in express terms; giving a certain time for an appeal after the passage of the act, to those persons falling within the constitution before the passage of the act. It is manifest, therefore, that the legislature intended to carry out the provisions of the 8th section of the 16th article of the new Constitution. This being so, it is the plain duty of the courts to sustain the purpose of the law, if it can be done without violence to its language.

The first objection to the act is, that it applies only to cases where "an appeal is not provided for, or regulated by existing laws," and an appeal being given to the Court of Quarter Sessions by the owner, it is said the act of 1874 is inapplicable to the case. But this objection overlooks the kind of appeal evidently intended by the act. The appeal is given "whether such assessments shall have been made by viewers, or otherwise *than upon a trial in court*, and an appeal is not provided for or *regulated* by existing laws." The words "otherwise than upon a trial in court," discover the evident intent to confer the appeal in those cases where the party has had no jury trial. If therefore an appeal and jury trial are not given, or, if given, not so regulated as to secure a jury trial, the intent was to carry out the constitutional injunction and give the appeal and jury trial. The alternative provision, "or regulated by existing laws," can have no other operation. If it had been intended not to allow an appeal in any case where an appeal was given, it was wholly unnecessary to add the words "and regulated." The act is poorly penned, but its purpose is too plain to suffer it to fail of the object intended. The constitutional injunction is too evident and the language too explicit to refuse this interpretation to the Act of 1874. The last clause of the constitutional provision is in these words, "and the amount of such damages, in *all* cases of appeal, shall, on the demand of either party, be determined by a jury according to the course of the common law." Here we have a plain injunction to be obeyed by the legislature, and a clear personal right to be enforced by the courts. Now, as we have seen, this being the purpose of the law, where an appeal is given by existing laws, but is not so "regulated" as to secure a jury trial, it is not the appeal intended by the act to supersede the appeal given by it, and the appeal given by it must therefore be allowed in order that the Constitution may be executed. The appeal from the councils to the Court of Quarter Sessions given by the Act of May 20th 1871, Pamph. L. 1032, makes no provision or regulation for a trial

[Pusey's Appeal.]

by jury; and therefore the Act of 1874 supplies the remedy by an appeal to the Court of Common Pleas.

Were it not for this special provision carrying the appeal into the Court of Common Pleas, we would find no difficulty in a trial by jury in the Court of Quarter Sessions, the latter court having full power of summoning a jury for the trial of all issues therein, under the Act of 14th April 1834, sections 108 to 115. But the appeal in this case being given expressly to the Court of Common Pleas, the proper court for the trial of civil issues, the Court of Quarter Sessions was warranted in certifying the record into the Court of Common Pleas for the trial of the appeal, as was done in the first order.

Objections are raised to this proceeding, which it may be proper to notice. For instance it is asked, "Will each landowner be entitled to an issue and a trial by jury?" Certainly he will, for the Constitution gives this right to him. It is said this will embarrass proceedings to lay out and open streets in those large cities where special legislation exists without a trial by jury. This cannot be avoided. It is a constitutional injunction which must be carried out by those who are sworn to support the Constitution. If there be fault in this, it lies at the door, not of the legislature, but of the convention which framed the provision.

Again, it is said that the Constitution provides only for a trial of the damages, and not of the benefits. This overlooks the inquiry which the Act of 1st April 1870 institutes in order to ascertain the damages. "They (the viewers) shall make a true and conscionable appraisement of the damages, taking into consideration the probable advantages and benefits which any owner or owners will be likely to sustain by reason of the proposed improvement." The damages therefore are the subject of the issue, but the legal mode of ascertaining them is by a comparison of the advantages and disadvantages. Indeed, in most cases damages are a result obtained by a comparison of the injury and the benefit accruing to the party. A familiar analogy is that of railroad damages; and many cases are to be found in the books showing that that mode of inquiry is pursued where the case has come before a jury on an appeal.

But the learned judge thought that Mr. Pusey had waived his appeal, because, when the report of viewers was set aside, the case was sent to a new board of viewers without his objecting. But a jury trial, as a constitutional right secured to a party, is never presumed to be waived, unless in a clear case. The waiver here alleged is inconsistent with his demand of a jury trial on the filing of his exceptions on the 20th of April 1875, as well as with the provisions of the Act of 1874. His first act in court was to demand a jury trial of the matters of fact involved in the exceptions. Clearly no implication of a waiver could be drawn against the force of his claim for a jury trial. Just as clearly, when the court on

his exceptions set aside the report of viewers, there was nothing from which an appeal could be taken. The Act of 1874 declares that the appeal shall be taken by either party to the Court of Common Pleas of the proper county, within thirty days *from the ascertainment of the damages or the filing of the report*. When the report was set aside the damages were not ascertained, and nothing remained from which an appeal could lie. Until a new ascertainment and filing of the report by the viewers, the appellant sustained no injury. When the new report was filed the damages were then ascertained, and he took his appeal within time. But it is unnecessary to pursue the case farther. The Constitution secures an appeal and trial by jury for damages caused where property is taken by a municipal corporation for public use. The Act of Assembly is intended to execute this duty, and gives an appeal to the Court of Common Pleas where no sufficient regulation for a trial by jury already exists. The court below therefore erred in revoking and vacating the order for an appeal of the 9th of October 1875. The vacating order of December 18th 1875 is therefore reversed, and the order of October 9th 1875 is restored, and a *remittitur* of the record with a *procedendo* is awarded.