# In re Towanda Bridge Co.

1. The right of eminent domain extends to corporate franchises, and by virtue of that right the bridge of a corporation can be taken for public use and made a free bridge.

2. In proceedings to take a bridge, the county, as well as the bridge company, have the right of appeal from the award of damages, to the Court of Common Pleas, and to a trial by jury. No time is fixed in the Act of May 3d 1878, for taking the appeal. It is to be under such regulations for bringing the matter to a trial in due course of law by a jury as the court may prescribe.

October 7th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Certiorari to the Court of Quarter Sessions of *Bradford county:*

In the court below these proceedings were commenced by a petition under the Act of May 1st 1876, Pamph. L. 86, Purd. Dig. 2074, and its supplement of May 3d 1878, Pamph. L. 41, which set forth that the Towanda Bridge Company have heretofore erected and maintained a bridge over the Susquehanna river at Towanda, where said river crosses a highway; that said bridge was erected and maintained, by authority of law, by said bridge company; that said bridge is necessary for the accommodation of the travelling public, and that the payment of tolls thereon is burdensome, and praying that the same may be taken as a county bridge. The bridge company filed a remonstrance, which was overruled without prejudice, and on the same date six viewers were appointed, and five days notice of the time and place of their meeting was directed to be given to the president of said company and to the county commissioners. On the 5th of May 1879, the viewers filed a report which set forth the manner in which their duties had been performed; that they had examined the bridge; that all were present at the view, and were severally sworn that the bridge was necessary as a free bridge for public accommodation; that the payment of tolls thereon was an unjust burden on the travelling public, and that by reason of taking said bridge the company would sustain damages to the amount of $20,000.

By permission of the court the bridge company filed the following exceptions to this report: 1. The Act of Assembly under which these proceedings are taken is unconstitutional. 2. The power of eminent domain sought to be exercised in these proceedings cannot be properly exercised, because the proposed taking is for the purpose of continuing the property in the same and not in a higher use. 3. The property proposed to be taken is not in the line of any public improvement or a part thereof. 4. That this proceeding is not by or on behalf of any person or corporation invested with the power of taking private property for public use. 5. That the bridge and its approaches are not situated where a public highway is crossed by a river or other stream. 6. The

[In re Towanda Bridge Co.]

petition is not sworn to.  7. The county commissioners are not parties to this proceeding, and have no power to approve or disapprove the taking of the property.  8. Two of the viewers report that they do not find the bridge necessary for the accommodation of the public as a free bridge, and the payment of tolls an unjust burden on the travelling public and the people of the township where located.  9. The report of the viewers is not the unanimous report of those who acted.

On July 23d 1879, the court, Elwell, P. J., of the Twenty-sixth Judicial District, holding a special court, filed the following opinion :

" It is objected against these proceedings that the Act of Assembly under which they are had is unconstitutional.  The purport of the first and second exceptions taken together is, that the legislature cannot authorize the taking of a bridge erected by a corporation over a river, crossing a highway on which the public are required to travel, and for crossing which tolls may be charged and taken, and making thereof a county bridge for the crossing of which no tolls can be charged or taken, although such bridge is necessary for the accommodation of public travel, and the payment of tolls over the same is burdensome to the travelling public.

" The Act of 1st May 1876, Purd. Dig. 2074, under which these proceedings were instituted, in express terms, provides a mode by which a bridge erected by a company may, upon compensation being made, be taken from the company and made free for the passage of the public.  By sect. 3, art. 16, of the constitution of 1874, it is declared, that ' the exercise of the right of eminent domain shall never be abridged or so construed as to prevent the General Assembly from taking the property and franchises of incorporated companies, and subjecting them to public use the same as the property of individuals.'

" The constitution of 1838 provided, that ' no man's property shall be taken or applied to public use without the consent of his representatives, and without just compensation being made.'  In Harvey v. Thomas, 10 Watts 66, it was said, per GIBSON, C. J., that this clause is a disabling, not an enabling one, and that the right to take property for public use would have existed without it.  This right of eminent domain is inherent in all governments, and requires no constitutional provision to give it force : Taylor v. Porter, 4 Hill 143.  Its existence and force are, however, clearly implied and acknowledged, in the portions of the constitution above quoted.  It is the rightful authority which exists in every sovereignty to control and regulate those rights of a public nature, which pertain to the citizens in common, and to appropriate and control individual property for the public benefit, as the public safety, necessity, convenience or welfare may demand : 2 Kent Com. 338–40 ; Cooley's Const. Lim. 662, and cases cited in note.

Every species of property which the public needs may require,

[In re Towanda Bridge Co.]

and which government cannot lawfully appropriate under any other right, is subject to be seized and appropriated under this right. Lands for public ways, buildings standing in the way of public improvements, or which for any other reason it becomes necessary to take or remove or destroy for public good; streams of water; corporate franchises, and generally legal and equitable rights of every description, are liable to be thus appropriated: Id. 654, and authorities there cited.

" Property in a franchise is no more sacred than private property in land, under a patent: Commonwealth v. Pennsylvania Canal Co., 16 P. F. Smith 41. Each species of property may be said to be held under a contract with the state, and yet it has never been doubted that land thus held may be taken for public use.

" In Bonaparte v. C. & A. Railroad Co., 1 Bald. C. C. 205, it was held that a statute franchise in a toll bridge or road must yield to this sovereign right, and may be taken and appropriated to public use whenever public exigencies may require it, ' for,' says the judge who delivered the opinion, ' a franchise is fixed and determined property, but it must be on condition of making compensation to the proprietors.' If there be in the assumption reasonable accommodation as respects the public, this right of an appropriation may be applied to turnpikes, bridges, ferries and other like property: Chancellor Walworth, in Bloodgood v. M. & H. Railroad Co., 18 Wend. 14, 15; Boston Water Co. v. Boston & Worcester Railroad Co., 23 Pick. 60; Plan of Kensington, 2 Rawle 448.

" In the case of Long v. Fuller, 18 P. F. Smith 170, it was held that the Act of 9th April 1867, which authorizes the taking of an acre of land by school directors for the purpose of a district school house, is not unconstitutional. In that case an acre of land belonging to Mrs. Long in the borough of Troy was taken, appraised and set apart by the school directors. The use was held to be public.

" The degree of the public necessity is exclusively for the legislature. It is not a judicial question. But the courts will take care that private property is taken under an assertion of eminent domain for no other than a public use. Per STRONG, J., in Smedly v. Irwin, 1 P. F. Smith 451.

" It undoubtedly must rest as a general rule with the wisdom of the legislature to determine when public uses require the assumption of private property; but if they should take it for a purpose not of a public nature, as if the property of A. should be taken and given to B., or if they should vacate a grant of property or a franchise, under the pretext of some public service, such cases would be clearly unconstitutional: 2 Kent's Com. 340.

" In the passage of the Acts of 1876 and 1878 under consideration the legislature declared, in effect, that under circumstances enumerated therein, it might be for the public benefit that a toll bridge

[In re Towanda Bridge Co.]

owned by a corporation should become a public county bridge, free to all persons.    But the question of necessity in each case as it may arise, was referred to the local courts, to be determined by the agency of viewers and the concurrence or non-concurrence of the grand jury.    The mode adopted in this act is substantially that which has always prevailed in regard to taking property for roads, &c., and is sustained by decisions of the Supreme Court : Pocopson Road, 4 Harris 15.    The result of the authorities appears to be, that the only conditions to the exercise of the right of the state to take private property is that the public good requires it, and that adequate compensation be made therefor.    The fact that the public good does require it is to be ascertained by legislative authority, which authority may be delegated to a corporation, or even to an individual, where the purpose is of public utility.

"It is contended here that the taking of a toll bridge and making it free to all is putting it to no higher use, and therefore not within the power of the legislature.    Of course the bridge will be passed over in the same manner after taken as before, but that has nothing to do with the question.    The use, in the sense of the law will not be the same.

" A free bridge is open for travel by night and by day, but in the hands of a private corporation it may be sometimes closed, to the inconvenience of a traveller, and can never be rightfully crossed without complying with legal exactions in the shape of tolls.    In one case the public have absolute rights and in the other conditional rights controlled by the corporation.    In the one case the bridge is maintained principally for the purpose of private gain and in the other for the accommodation, convenience and welfare of the public, and for its relief from an unnecessary burden.

"There is no doubt as to the constitutionality of the Act of 1876, as amended by the Act of 1878.    It is not in conflict with any clause of the federal or state constitution.    The third exception to the report may be dismissed, with the single remark, that there is nothing in the law which requires that a bridge, to be taken for public use, shall be in the line of a public improvement or a part thereof.    The fourth exception cannot be sustained.    The law provides that proceedings under the statute may be begun and carried on upon the petition of twenty residents and tax-payers of the county.    The fifth exception asserts that the bridge proposed to be taken and appropriated is not situated where a public highway is crossed by a river or other stream.    No evidence in regard to this exception was taken, but the exceptants content themselves with a simple denial of the facts alleged in the petition.    The petition alleges that the bridge in question is over the Susquehanna river, between the borough of Towanda and the township of Wysox, in the county of Bradford, where said river crosses a road or highway ; that said road in Wysox township is known as the

[In re Towanda Bridge Co.]

New East Towanda road, and that the said road in Towanda borough is known as Bridge street.

"It appears by the document in evidence, on the argument of these exceptions, that there is a road leading up and down the river, and that from it there is a causeway for a distance of thirty or forty rods to the end of the bridge. If this causeway is maintained by the bridge company, and is necessary to reach their bridge, it is part of the bridge itself, and would pass by a sale of its franchises. If it is kept in repair by the public, it is a public highway. Ever since the bridge was erected, more than forty years ago, there has been a way open to each end of the bridge. The bridge itself is a highway, and forms the connecting lines between the highways on opposite sides of the river. It is surely not necessary, to bring a case within the Act of Assembly, that the petitioners should show that a highway had been laid out not only *to* but *across* the river. I apprehend that, except in the case of state roads, laid out by the commissioners appointed for that purpose, no case can be found where a public road has been laid out by course and distance across the Susquehanna river; and yet, within the meaning of the law, where there is a highway to the river on each side, the river may be said to cross a highway; and although there may be no record of a laying out of the road, yet if it has been used by the public as a highway for twenty-one years, it has become a highway by prescription. Many highways throughout the Commonwealth stand upon no other title. The Act of Assembly under consideration applies to *highways*, without regard to the manner of their becoming such. The fifth exception is overruled, as not founded in fact.

"The sixth and seventh exceptions are overruled. The law does not require that the petition, upon which the proceedings are founded, should be sworn to. Under the general road law of the state for the laying out of roads or erecting county bridges, a petition of citizens is required, as in the Act of 1876, but it has never been the practice to require them to be sworn to. An oath is never required to a petition in the Quarter Sessions, except by virtue of some statute. Notice appears to have been given by the viewers as required by the Act of Assembly; there was no necessity to give special notice to the commissioners of the county.

"The eighth and ninth exceptions cannot be sustained. Where several persons are authorized to do an act of a public nature which requires deliberation, though all be convened, a majority may decide: Turnpike Road by Chadd's Ford, 5 Binn. 481; Paradise Road, 5 Casey 20.

"The exceptions to the report of viewers are overruled. But we do not now confirm the report upon the merits. The act requires the approval of the grand jury, before final action can be taken by the court. Request having been made by the bridge

[In re Towanda Bridge Co.]

company, that in their inquiry into the propriety of approving and confirming the report of the viewers, that witnesses may be examined for and against the same, agreeably to the provisions of the eleventh section of the act, the court will refer the case first to the grand jury to be considered and acted upon as required by law.

"And now, July 22d 1879, the exceptions by the Towanda Bridge Company to the report of the viewers are overruled, and it is directed that the report be laid before the grand jury at the September sessions of the court, and that if requested, it is directed that they hear and examine witnesses for and against the same."

The company moved the court to fix a time at which the court and grand jury should hear and examine witnesses for and against the confirmation of the report of the viewers, which motion was refused. On September 2d 1879, the grand jury reported in favor of confirming the report of the viewers. On September 15th 1879, the company applied to the court to fix a time when witnesses should be heard by the court upon their inquiring into the propriety of confirming the report of the viewers. This motion was also refused, and the court concurred in the finding of the grand jury, and approved the report of the viewers, when this writ was taken by the company, which alleged that the court erred in this action.

*Edward Overton, Jr.*, and *John F. Sanderson*, for the bridge company.

*Davies & Carnochan*, for county of Bradford.

The judgment of the Supreme Court was entered March 29th 1880,

PER CURIAM.—That the right of eminent domain extends to corporate franchises, and that by virtue of that right the bridge of a corporation can be taken for public use and made a free bridge, we think are positions no longer open to controversy. The opinion of Judge Elwell, and the authorities cited by him, are conclusive upon that subject. The proposition to have the question as to the necessity of taking the bridge heard in open court before the judge and grand jury was certainly a novel one, and if it was in the sound discretion of the court to grant or refuse it, their decision cannot be reviewed here. The question whether, under the provision of art. 16, sect. 8, of the constitution, the county can take actual possession of the bridge without paying or securring the damages awarded, does not arise on this record. There is no order of court to the county commissioners to take possession. The county, as well as the bridge company, had the right to appeal from the award of damages to the Court of Common Pleas and to a trial by jury. No time is fixed in the Act of 1878 for taking the appeal. It is to be under such regulations for bringing the

matter to a trial in due course of law by a jury as the court may prescribe.   The record shows no appeal.   The certiorari was issued and filed in the court below two days after the confirmation by the court of the finding of the grand jury.

Proceedings affirmed.