Mount Pleasant Avenue. Appeals of Ashton S. Tourison, Philip H. Bentz and Charles E. Loxley.

*Road law—Change of grade—Assessment for benefits—Appeal—Act of May 16, 1891.*

An owner of property who is assessed with benefits by a jury appointed under the act of May 16, 1891, P. L. 75, is entitled to take an appeal from the assessment of benefits to the court of common pleas, and to have a trial by jury.

*Constitutional law—Damages to property—Constitution of 1874, art. 16, sec. 8.*

The "preliminary assessment of damages," referred to in section 8 of art. 16 of the constitution of 1874, prohibiting the legislature "from depriving any person of an appeal from any preliminary assessment of damages," refers to damages sustained by the owner of property when it is "taken, injured or destroyed" by the construction or enlargement of public works, highways or improvements.

Argued March 26, 1895. Appeals, Nos. 70, 71 and 72, Jan. T., 1895, taken severally by Ashton S. Tourison, Phillip H. Bentz and Charles E. Loxley, from order of C. P. No. 2, Sept. T., 1891, No. 664, discharging rules to strike off appeals from assessments of benefits. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Petition for jury of view to assess damages for the change of grade of Mount Pleasant avenue, corner of Chew street.

The facts appear by the opinion of the Supreme Court.

*Errors assigned*, among others, were orders discharging rules to strike off appeals from the report of the viewers assessing benefits.

*James Alcorn*, assistant city solicitor, *George E. Fili* and *Charles F. Warwick*, city solicitor, with him, for appellant.—

The act only allows an appeal to the party whose property is taken, injured or destroyed, and permits exceptions in the case of parties assessed with benefits, and an appeal to the Supreme Court to any party interested in any assessment of benefits or damages: Penna. Steel Co.'s App., 161 Pa. 571.

There is no appeal in such cases unless the statute grants it. The proceedings for the assessment of damages and benefits in road cases being statutory, there can be no appeal unless allowed by statute: Gangewere's App., 61 Pa. 342.

The act of May 26, 1891, P. L. 116, permits an appeal to the common pleas for a trial on the question of damages by a jury. This does not allow an appeal to try the question of benefits.

In the case of Park Avenue, 83 Pa. 167, the special act of assembly under which the proceedings took place allowed an appeal from the assessment of damages and also an appeal from the assessment of benefits.

The benefits assessed by the jury are a species of local taxation, and the findings of the jury as to that fact are conclusive. That such assessments are a tax was recognized in McMasters v. Com., 3 Watts, 292, and their constitutionality settled: Hancock Street, 18 Pa. 26.

In a number of cases the levying of a tax of a similar nature for street improvements, paving, grading, etc., has been repeatedly recognized: Com. v. Woods, 44 Pa. 113; Wray v. Pittsburg, 46 Pa. 365; Magee v. Com, 46 Pa. 358; Washington Ave., 69 Pa. 352; Stroud v. Philadelphia, 61 Pa. 255; Allentown v. Henry, 73 Pa. 404; In re Centre Street, 115 Pa. 247; Morewood Avenue, 159 Pa. 20; Pittsburg's Petition, 138 Pa. 401.

*William Henry Lex*, for appellees.—An appeal lies from an assessment of benefits: Pusey's App., 83 Pa. 67; Kelly v. The City, 19 Phila. 556; act of April 1, 1864, P. L. 206; act of June 13, 1874, P. L. 283.

TOURISON'S APPEAL.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

The city, by proper ordinance, in 1888, authorized a change of grades of Mount Pleasant avenue and Chew street, and then,

·in 1889, further authorized the grading of Mount Pleasant avenue from Germantown avenue to Boyer street, and Chew street from Mount Airy avenue to Mount Pleasant avenue, according to a revised plan. A petition to the court of common pleas was presented by John Johnson, a property owner, on November 12, 1891, praying for the appointment of viewers to assess damages and benefits, under act of May 16, 1891. The viewers were appointed, and reported September 30, 1892, that they had assessed damages to the amount of $3,300, and benefits to the amount of $1,823. Of the benefits assessed $1,493 were on Tourison, this plaintiff; $90.00 on Philip H. Bentz, and $40.00 on Charles E. Lockley and wife. These parties had made no claim for damages before the jury, and their property was not actually taken, injured or destroyed by the change of grade. By the change a cut was made from Chew street to Germantown road, reducing the street to the level of the properties assessed with benefits. The cost of the grading was paid by the city. The jury considered only the effect on the property by the change of grade. Tourison appealed from the assessment to the court of common pleas on October 29, 1892. The city took a rule to show cause why the appeal should not be stricken off, which rule the court, on hearing, dischárged; afterwards, the court confirmed the report of viewers awarding damages, and then, after that, on September 13, 1893, confirmed the report of viewers generally; then, on March 10, 1894, set aside this last decree, and made an order restraining the city from filing claims for the assessments of benefits, because of the appeal pending by Tourison and others. The city appeals from this decree, and also from that of March 10, 1894, setting aside the confirmation of the report of viewers, on the ground that parties assessed with benefits have not the right of appeal to a jury from the assessment by the viewers.

The act of 1891 says: " Within thirty days from the filing of any report in court, any party whose property is taken, injured or destroyed, may appeal and demand a trial by jury, and any party interested in any assessment of damages or benefits may, within thirty days after final decree, have an appeal to the Supreme Court."

. It is argued, the language of this statute limits the right of appeal to one whose property has been taken, injured or de-

stroyed, and gives no appeal to one assessed only with benefits ; the remedy of the latter, when dissatisfied with the assessment, being under the first part of the same section, which says: " Upon the report of said viewers or any two of them being filed in said court, any party may, within thirty days thereafter, file exceptions to the same, and the court shall have power to confirm said report, or to modify, change or otherwise correct the same, or change the assessments made therein, or refer the same back to the same or new viewers, with like power as to their report."

On a cursory reading of the act apparently from the words used to designate parties to the proceedings, there were in the legislative mind but two classes whose interests might be affected by the municipal improvement, both of whom could move before the court for confirmation, modification or change of the assessments ; the words " any party " including but the two who were either damaged or benefited. Then comes the second thought; those whose property has been taken, injured or destroyed are, in a peculiar sense, the sufferers in the interests of the general public, and ought to have an additional means of redress ; so, to give effect to this idea, the legislature goes on to say : " Or . . . . any party whose property is taken, injured or destroyed may appeal and demand a trial by jury." Thus, it is urged, under this second designation, the right of appeal was strictly limited to those whose property is taken, injured or destroyed, and those whose property is benefited are, by the only reasonable interpretation, excluded. Hence it is argued, as the right of appeal is purely statutory, and as the statute is silent as to those benefited, their appeal should be stricken off.

But this interpretation assumes there are but two parties to the proceedings, those benefited and those damaged, while there are in fact three, and perhaps more ; the third, the municipality which directs the improvement and may be called upon to pay. The words, " any party," designate those damaged, benefited, and the city, all of whom may file exceptions ; or there may be rights to property, federal or state, paramount to those of the municipality, and by reason thereof there would be other parties still who could invoke protection by exceptions. Having these facts in view, we do not think the use of the

words; "any party," was intended to exclusively designate the party benefited and the party damaged, and as a consequence distinguish those damaged, who in the second part of the section are given the right of appeal, from those benefited, who are not by this name given the same right.

If, then, there be nothing in the wording of the act which negatives the right of appeal in those benefited, the question remaining is, whether, in a reasonable interpretation of the designation, "any party whose property is taken, injured or destroyed may appeal," those assessed with benefits are included?

The right of appeal, if there be such right to a suitor in this class of cases, is a fundamental right, conferred by the constitution, not subject to legislative restriction; if there be a jury trial by virtue of the description of parties in section 8, article XVI., it remained undisturbed, without regard to the language of the act of 1891. The constitution declares: "The general assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals, made by viewers or otherwise; and the amount of such damages in all cases of appeal shall on the demand of either party be determined by a jury according to the course of the common law."

The "preliminary assessment of damages," here referred to, is that damage sustained by the owner of property, when it is "taken, injured or destroyed" by the construction or enlargement of public works, highways or improvements. This section gives an appeal in all cases where the property has been taken by a municipal corporation: In re Towanda Bridge Co., 91 Pa. 216; Monongahela Bridge Co. v. Railway Co., 114 Pa. 478.

The second section of the act of 1891, under which this assessment was had, directs that the viewers "shall estimate and determine the damages for property taken, injured and destroyed to whom the same is payable, and having so estimated and determined the damages together with the benefits . . . . they shall prepare a schedule." Then it directs that notice shall be given to "all parties allowed damages or assessed benefits, as shown by the schedule;" then, they shall make a report to the court, "showing the damage and benefits allowed and assessed in each case." Then, the third section directs:

'The payment of the damages sustained by the making of their improvements . . . . may be made, either in whole or in part, by the corporation or in whole or in part upon the property benefited, . . . . in the latter case, the viewers appointed to assess damages, having first estimated and determined the same apart from the benefits, shall also assess the said damages, or so much thereof, as they shall deem just and reasonable, upon the properties peculiarly benefited by the improvement, including in the said assessment all properties for which damages have been allowed, if, in their judgment such properties will be benefited thereby."

While the word benefits is used throughout the act, it is plain, from its expressed terms, that the viewers' duty, primarily, is to consider the improvement first as a whole, as planned and laid out by the city ; then, the amount of damage which will result from its execution ; then, if the damages are to be made up in whole or in part from benefits assessed, they must first assess the damages apart from the benefits ; having done this, they must assess so much as they deem just and reasonable upon properties peculiarly benefited ; also, must include further, all benefits to properties damaged. This method, in its operation, is not distinguishable from that to ascertain damages to a landowner by the construction of a railroad ; these are ascertained by a comparison of the advantages and disadvantages to the whole tract, as is remarked by AGNEW, J., in Pusey's Appeal, hereinafter cited. In the improvement of streets, by reason of the severance of the land into lots fronting on the street, the result of the comparison of damages and benefits is to sever the claims in specific sums paid by or to the respective owners, but the basis for ascertaining the damage for the improvement is the same. The benefit of one lot owner is assessed as damage which he must pay to one who is injured ; and even the one who on the whole is damaged, may on a comparison derive some benefit, in which case the benefit is deducted from his injury, and the remainder is his damages, to which the one who has a surplus of benefit must contribute. The result of the whole proceeding is damages for property taken, injured or destroyed, which, either the specially benefited lot owner or the city, that is, the public generally benefited, must pay. Throughout the whole act, damages and

benefits are blended as damages in the result as a whole; but when it comes to paying, then, necessarily, by reason of the severance of the land into lots creating distinct ownerships, there must be apportionment so that each lot owner who has to pay damages shall have his liability exactly determined.

This whole subject is fully discussed and the same conclusion clearly demonstrated by Judge GORDON in Kelley v. City of Phila., 19 Phila. 556. While that decision is a construction of the acts of 1864 and 1874, it is just as applicable to the act of 1891. The same question is to some extent discussed by AGNEW J., in Pusey's Appeal, 83 Pa. 67, where the point that benefits were distinguished from damages, and that a trial by jury under the constitution and act of 1874 was allowed only to him whose property is taken, injured or destroyed, was denied. To quote from that opinion: " Again it is said the constitution provides only for a trial of the damages and not of the benefits. This overlooks the inquiry which the act of April 1, 1870, institutes in order to ascertain the damages. They, the viewers, shall make a true and conscionable appraisement of the damages, taking into consideration the probable advantages and benefits which any owner or owners will be likely to sustain by reason of the proposed improvement. The damages, therefore, are the subject of the issue, but the legal mode of ascertaining them is by a comparison of the advantages and disadvantages. Indeed, in most cases, damages are a result obtained by a comparison of the injury and benefit accruing to the party. A familiar analogy is that of railroad damages."

Further, the latter part of the sixth section of the act of 1891, itself, it seems to us, will bear no reasonable construction other than that benefits are embraced in the general term, damages. It declares, any party whose property is taken, injured or destroyed, may appeal and demand a trial by jury, and then immediately in the same sentence without a break says: and any party interested in any assessment of damages or benefits may within thirty days after final decree have an appeal to the Supreme Court; if " final decree " here means decree on exceptions to the report of viewers, then the party to whom is awarded damages has no appeal from the judgment entered on the verdict of a jury which has never been contended; if it means final judgment or decree on a verdict in the appeal, then

it includes him who is assessed with benefits, the one paying damages, with the one to whom they are paid.

The trouble with appellant's construction of the act is that the report of viewers on a disputed fact concludes the suitor as to his constitutional remedy; he presents his petition for appointment of viewers to assess his damages; they report, assessing against him benefits; this deprives him of a jury trial; the facts must be determined on exceptions by the court; his neighbor, who is awarded five dollars damages, can be heard before a jury. His standing as a suitor, whether as a beneficiary or a sufferer, is determined by a subordinate tribunal unknown to the common law, and bars his way to the common law jury, which the constitution declares he shall have access to on "demand of either party." And he is shut out from his remedy, not by the court on a question of law ascertainable from his plea, but on an adverse determination of fact by viewers without regard to his averment of facts. As is well said by the learned judge of the court below: "Upon principle there would seem to be no reason for granting an appeal in the case of damages, and refusing such appeal in the case of benefits." If there be no reason upon principle for refusing the appeal, we are clear there is none in the statute; on the contrary, we are of the opinion that a reasonable interpretation of the constitutional and statutory legislation on the subject confers the right of appeal upon one assessed with benefits.

The judgment is affirmed.

### LOXLEY'S APPEAL.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

This appeal raises the same questions decided in the case of Ashton S. Tourison v. The City of Philadelphia, ante, p. 38, opinion filed herewith.

The judgment is affirmed.

### BENTZ'S APPEAL.

OPINION BY MR. JUSTICE DEAN, October 7, 1895:

This appeal raises the same questions decided in Ashton S. Tourison v. City of Philadelphia supra, opinion filed herewith.

The judgment is affirmed.