# Philadelphia, Morton & Swarthmore Street Railway Company's Petition.   203 Pa

*Street railways—Use of tracks of another company—Final order—Appeals.*

An order of the court made at the instance of a street railway company which desires to complete its circuit by the use of the tracks of another company, appointing viewers to assess damages, and approving bond of the petitioning company, is a final order from which an appeal will lie, even though the proceedings for the assessment of damages are undetermined.

*Street railways—Eminent domain—Use of another company's tracks— Acts of May 14, 1889, P. L. 211, sec. 14, and May 21, 1895, P. L. 93—Constitutional law.*

While the legislature may in the exercise of the right of eminent domain take franchises and property engaged in a public use, and apply them to another public use, a statute cannot be maintained which confers upon one corporation for profit the right to appropriate the property of another to exactly the same public uses merely for the convenience and profit of the younger corporation.

The Act of May 14, 1889, P. L. 211, sec. 14, as amended by the Act of May 21, 1895, P. L. 93, which gave to a street railway company subject to the payment of damages, the right to use 2,500 feet of the tracks of another street railway company is unconstitutional. Section 14 of the act of May 14, 1889, is also unconstitutional because it provides no adequate security for damages for the property taken. Harrisburg, etc., Turnpike Road Co. v. Harrisburg, etc., Railway Co., 177 Pa. 585, reaffirmed.

A street railway company organized under the Act of May 14, 1889, P. L. 211, may deny the constitutionality of section 14 of the act with its amendments, inasmuch as the section is a distinct legislative enactment which may be eliminated, leaving all the other provisions to stand in full force. Lockhart v. Craig Street Railway Co., 139 Pa. 419, and Homestead Street Railway Co. v. Pittsburg, etc., Electric Street Railway Co., 166 Pa. 162, explained.

Argued Feb. 10, 1902.   Appeal, No. 205, Jan. T., 1901, by the Chester, Darby & Philadelphia Railway Company, the Union Railway Company of Chester and the Chester Traction Company, from order of C. P. Delaware Co., June T., 1900, No. 104, appointing viewers and permitting the filing of a bond in the matter of Philadelphia, Morton & Swarthmore Street Railway Company's Petition. Before MITCHELL, DEAN, FELL, MESTREZAT and POTTER, JJ.   Reversed.

Petition for appointment of viewers and for leave to file a bond.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the order of the court, appointing viewers and approving bond.

*W. B. Broomall,* for appellant.—The act of 1889 does not authorize an extension of a branch over the tracks of another company by adverse proceedings.

The power claimed being in derogation of common right can-

not be exercised unless given in express terms or by necessary implication. There can be no implication in favor of the right unless it arises fro.n a necessity so absolute that, without it, the grant itself will be defeated. It must also be a necessity over which the corporation has no control, and not created by the company itself for its own convenience or for the sake of economy: Penna. R. R. Co.'s Appeal, 93 Pa. 150; Penna. R. R. Co.'s Appeal, 115 Pa. 514; Appeal of Pittsburg Junction R. R. Co., 122 Pa. 511; Appeal of Sharon Railway Co., 122 Pa. 533; Appeal of Groff et al., 128 Pa. 621; Endlich on Interpretation of Statutes, sec. 354; Scranton Gas & Water Co. v. Northern Coal & Iron Co., 192 Pa. 80.

*D. Wallerstein*, with him *E. A. Howell*, for appellee.—The right given to one railway company, by the act of 1889, to use the track of another railway company is not confined to the so-called charter route of the former: Penna. R. R. Co.'s App., 116 Pa. 55; McAboy's App., 107 Pa. 548; Braddock, etc., Ry. Co. v. Braddock Electric Ry. Co., 49 Legal Int. 25; Groff's App., 128 Pa. 621; Penna. R. R. Co.'s App., 115 Pa. 514.

As to the necessity for the branch, that is a matter wholly for the company adopting it: McAboy's App., 107 Pa. 548.

The act of May 14, 1889, as a whole, is unquestionably constitutional. This court itself has said so: Lockhart v. Craig Street Ry. Co., 139 Pa. 419; Homestead Street Ry. Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162.

The act of 1889, under which the appellant company was incorporated, became a part of its charter and that company in accepting its charter under the act was bound by the burdens as well as possessed of the benefits of that act. It never had an exclusive franchise and unconditional ownership of the property such as would entitle it to invoke section 8, article 16 of the constitution: Penna. R. R. Co. v. Duncan, 111 Pa. 352; Penna. R. R. Co. v. Miller, 132 U. S. 75 (10 Sup. Ct. Repr. 34); Sandy Lake Borough v. Sandy Lake Gas Company, 16 Pa. Superior Ct. 234; Dugan v. The Bridge Co., 27 Pa. 303; People v. Murray, 5 Hill, 468; Darge v. Horicon Iron Mfg. Co., 22 Wis. 417.

The payment of the amount of the award of the jury of view into court is security for the payment of damages under the

constitution : Schuler v. Northern Liberties, etc., R. R. Co., 3 Wharton, 555; Levering v. Philadelphia, etc., R. R. Co., 8 W. & S. 459; Harrisburg, etc., Turnpike Co. v. Harrisburg, etc., Ry. Co., 177 Pa. 585; Redman v. Phila., etc., R. R. Co., 33 N. J. Eq. 165; Packard v. Bergen Neck Railway Co., 48 N. J. Eq. 287; Mercer & Somerset Ry. Co. v. Delaware, etc., R. R. Co., 26 N. J. Eq. 464; Penna. R. R. Co. v. National Docks, etc., Ry. Co., 53 N. J. Eq. 178; Oliver v. Union Point, etc., R. R. Co., 83 Ga. 257; Lake Erie & Western Ry. Co. v. Kinsey, 87 Ind. 514; Meyer v. Day, 125 Ind. 335; Consumers Gas Trust Co. v. Harless, 131 Ind. 446; Application of The New York Cent. & Hudson River R. R. Co., 60 N. Y. 116; Peterson v. Ferreby, 30 Ia. 327; Downing v. Des Moines Northwestern Ry. Co., 63 Ia. 177; St. Louis, etc., R. R. Co. v. Clark, 24 S. W. Repr. 157; Shepardson v. Milwaukee, etc., R. R. Co., 6 Wis. 605; Powers v. Bears, 12 Wis. 213; Meily v. Zurmehly, 23 Ohio, 627; Union Pacific Ry. Co. v. Atchison, etc., R. R. Co., 28 Kan. 453.

The legislature may prescribe the kind and character of the security to be given and the manner in which it shall be given: Wallace v. New Castle, etc., R. R. Co., 138 Pa. 168; Fries v. Southern Pennsylvania R. R. Co., 85 Pa. 73; Fischer v. Catawissa R. R. Co., 175 Pa. 554.

The constitution of Pennsylvania specifically reserves to the legislature the power to alter or amend any charter and such reservation is binding on the company incorporated: Detroit v. Plank Road Co., 43 Mich. 140 (5 N. W. Repr. 275); Commissioners of Inland Fisheries v. Holyoke Water Power Co., 104 Mass. 446; Penna. R. R. Co. v. Duncan, 111 Pa. 352.

OPINION BY MR. JUSTICE DEAN, October 13, 1902:

The appellant is the owner of an electric street railway running from Chester to Darby on the Chester and Darby Telford road. Appellee is the owner of another street railway extending west, from a point where Parker avenue of Collingdale borough intersects the Chester and Darby Telford road. This point is about 800 feet west of Darby. On June 4, 1900, the appellee presented a petition to the court of common pleas setting forth that it had constructed its railway over its chartered route as far as the Parker avenue intersection with the Telford

road, but, that to complete the circuit and connect with other of its tracks, it was necessary to use the tracks, poles, wires, etc., of appellant company from the Parker avenue intersection, eastwardly to the intersection of Main street with the same Telford road a distance of about 800 feet; therefore, the court was prayed to appoint five persons as viewers to assess damages as provided by law.

To this petition three separate answers were filed by appellant, denying the right of the petitioner to use its tracks, poles and wires, and consequently, the authority of the court to appoint viewers. We notice only the third, for it substantially embraces all the objections made by appellant. It avers in substance: 1. That no notice of the presentation of the petition for viewers was given it. 2. That the route along the Chester and Darby turnpike road specified in the petition is no part of the chartered route of petitioner's road, but a mere extension adopted by petitioner. That section 14 of the act of May 14, 1889, as well as the amendment of May 21, 1895, upon which legislation the petition is founded, are unconstitutional and do not warrant the appointment of viewers or other proceedings at law for the condemnation of its tracks and the assessment of damages. 3. There is no legal authority for the condemnation of appellant's tracks for the purpose of construction of a branch of its main road. 4. That by reason of a contract made by appellant with the Chester and Darby Telford Road Company, it obtained the exclusive right to the use of the turnpike, before the passage of the act of 1895, and, therefore, the legislature could not constitutionally confer upon another company, a right to, not exceeding 2,500 feet of the same turnpike.

The court appointed viewers as asked by the petitioner, the latter filing with the approval of the court a bond conditioned for the payment of any damages; the appellee, also, filed a bill in equity to restrain the appellant by injunction from preventing appellee taking possession of their tracks as attempted under the act of 1895; the court enjoined appellant from any resistance to such possession. Appellant, then appealed from the decree appointing the viewers and approving the bond as also from the decree awarding the injunction to this court, and we have now the issue before us.

This is in no proper sense of the term, an appeal from an in-

terlocutory decree or order. The appointment of viewers to assess damages, as well as the issuing of the injunction, were based on section 14 of the act of 1889, as amended by the act of May 21, 1895, which gives the petitioner at once the possession of the tracks, leaving the older corporation but the single remedy of compensation at the end of the proceedings to assess damages; the amount of damages, if appeal be made to the common pleas and this court, being only ascertainable on final judgment; but the petitioner is at once put in possession of appellant's tracks, poles, and wires long before its right to take such possession is finally judicially determined. If the question were only one involving the amount of damages, it would be an interlocutory decree; but it strikes deeper; the right to possession at all is denied by appellant; this denial the court, in effect, overrules and in spite of it gives possession at once, with all the grave consequences incident to such possession, to an antagonistic claimant. Nor would it be any sufficient answer to say, that if at final judgment, the question should be decided against it, it could be turned out, for in the mean time, while litigation was proceeding for months, perhaps years, to determine the amount of damages, it would have been wrongfully in possession of appellant's property. And on what basis is the demand to be assessed? It is not like the appropriation of land by a railroad, where the right to enter has been long settled by judicial decision, and the amount of damages is the sole question in dispute; here the damage is a subordinate question; the predominant and controlling one, is the right to enter; the right of a younger franchise to take possession of and appropriate the franchise and property of an older one, under the facts here presented, is now for the first time before us; the decree in effect, either assumes or establishes the right of the younger one and is practically, as to possession, a final decree; it, therefore, can be properly appealed from, even though proceedings for assessment of damages are still undetermined.

The second and third objections to the proceedings in the court, as heretofore noticed, which same objections, are now under the assignments of error raised on this appeal, aver, that section 14 of the act of 1889, with its amendment in the act of 1895 are unconstitutional. That the point raised may fully appear, we quote section 14 of the first act.

" Section 14. Any passenger railway incorporated under this act shall have the right to use such portion of the track of any other company, already laid down, as may be necessary to construct a circuit upon its own road at the end thereof. The length of the track to be used, which shall be used only with the consent of the local authorities of the city, borough or township, in no event shall exceed 500 feet in length of single track. Before any such use occurs, compensation shall be paid to the corporation owning the track laid. In case of disagreement, the court of common pleas of the proper county, upon the petition of the corporation seeking the privilege, shall appoint five persons to view and assess the damages, and report thereof make to the court, with the right of appeal now secured under section 8 of article 16, of the constitution, and of an act for the further regulation of appeals from assessment of damages to owners of property taken for public use, passed June 13th, one thousand eight hundred and seventy-four. If an appeal shall be taken, it shall be competent to pay into court the amount of said award, upon which payment the right to use said track shall vest and said sum shall await the final judgment on said appeal."

The only material change made by the amendment in the act of 1889, is in the words: " The length of track to be used, . . . . in no event shall exceed 500 feet in length of single track." In the amendment this reads, " in no event shall exceed 2,500 feet of street or highway."

Both companies were incorporated under the act of 1889, but the appellant company was organized before the amendment of May 21, 1895, the appellee company subsequently; both have their being under the act of 1889 ; the 14th section of that act gives the company organized under it the right to use 500 feet in length of single track of another company ; as amended by the act of 1895, the right is given to any company organized after its passage to use 2,500 feet of the street or highway on which the tracks of the older company are laid without regard to the number of tracks.

The constitutionality of section 14 with its amendment is denied. Can its constitutionality under the settled law be sustained ? For whatever might be our opinion of the justice or wisdom of such legislation, we would not strike down an act of the legislature, a co-ordinate branch of the government, who are

as much bound to obey the fundamental law as we, unless the act palpably violates that instrument.

We are in no doubt, as to just what power the legislature intended to confer by these acts ; it was a clear grant of a right to the younger to enter upon the easement of the older company, and take possession of 2,500 feet of its tracks, poles, and wires thereafter, to use them for its corporate purposes.   It is not material, that this possession was not to be exclusive; in whatever light it is viewed, it was an authority to appropriate to a certain extent the franchise and property of the older company.   In our earlier judicial history, it was sometimes doubted whether the property of a corporation used under its franchise for its own profit and the convenience of the public, could, under the right of eminent domain be again appropriated by the state, or by a second corporation which had been granted the right of eminent domain ; but it has long since been settled, that all private property may be taken for public use ; that all property not purely public is private, whether it belongs to an individual, or a corporation aggregate or sole ; that while a corporation aggregate may be created for public purposes, and be granted rights and immunities, only because it serves the public, yet the purpose of the members is private profit to be realized by serving the public, and in that sense, the franchise and property it acquires whereby the individual profit accrues to each member of the corporation are private property and may be appropriated to another public use by the state.   The substance of all the authorities, and they are many, is, as stated by Chancellor WALWORTH, Beekman v. Railroad Co., 3 Paige, 45, 73 : " Notwithstanding the grant to individuals, the eminent domain, the highest and most exact idea of property, remains in the government, or in the aggregate body of the people in their sovereign capacity ; and they have a right to resume the possession of the property in the manner directed by the constitution and laws of the state whenever the public interest requires it." But in addition to the power resting on the state's inherent right of sovereignty, section 3, article 16 of our constitution declares :

" The exercise of the right of eminent domain shall never be abridged or so construed as to prevent the general assembly from taking the property and franchises of incorporated com-

panies and subjecting them to public use, the same as the property of individuals."

Therefore, the authority of the legislature to confer on a corporation the right to take the franchise and property of an older corporation for public use cannot be questioned. Whether it be expedient or wise for the legislature to exercise this authority, to take property for public use, is purely a political question and one solely for the legislature. But whether the use to which it is sought to appropriate the property authorized to be taken, is a public use, is a judicial question for the determination of the courts: West River Bridge Co. v. Dix, 6 Howard (U. S.), 507; Pittsburg v. Scott, 1 Pa. 309; Jessup v. Loucks, 55 Pa. 350; Stewart's Appeal, 56 Pa. 413; Philadelphia, etc., Railroad Co.'s Appeal, 120 Pa. 90; Edgewood R. R. Co.'s Appeal, 79 Pa. 257; Commonwealth v. Pa. Canal Co., 66 Pa. 41. In all these cases the court decided whether the appropriation of the franchise of the older under the right of eminent domain was a new and enlarged use for the benefit of the public, and therefore such a "public use" as brought it within the meaning of the constitution. The first case cited, Bridge Co. v. Dix, went to the Supreme Court of the United States on a writ of error to the Supreme Court of Vermont; the plaintiff in error averring that a statute of Vermont was in conflict with the federal constitution. The bridge company in 1795, had been invested by the legislature with the exclusive privilege of building a bridge over West river within four miles of its mouth, with the right to collect tolls from those passing over it, the franchise to continue for one hundred years. The corporation under its franchise, constructed its bridge and enjoyed its profit until the year 1839, when another act was passed authorizing the state courts, whenever in their judgment the public good so required, to take any real estate easement or franchise of any turnpike or other corporation for the purposes of a public highway, to observe, however, the same rules in making compensation as provided by law in other cases where property was taken for public uses. Upon the petition of Dix et al., proceedings were instituted for the construction of a public road or highway between certain terminals, the road passing upon and over the bridge, thus converting it into a free highway for all the pub-

lic. Damages were assessed in favor of the bridge company and paid into court. The company denied the right of the legislature to appropriate its franchise and property, on the ground, that such appropriation impaired its contract with the state as implied by its charter, and, therefore, contravened the constitution of the United States. The Vermont courts decided against the company, and their judgment was affirmed by the federal court. Three opinions were filed in the United States Supreme Court concurring in this judgment against the bridge company. It was held that the franchise and the property of the company were subject to the right of eminent domain and could be taken for public use by the state without impairment of the contract relation with the state, if the second use to which the property was devoted was another and more beneficial to the public than the old one; that the use for which it was taken, although practically of the same kind as that made of the bridge before, was a public use, in that thereafter, it became free to all the public, whereas before, it was limited to those who could pay or were willing to pay tolls; that the use was enlarged and more beneficial to the general public when free from tolls. The case was ably argued by Mr. Webster for plaintiff in error, and by Mr. Phelps, contra. The opinions by the three justices, DANIEL, McLEAN and WOODBURY are very full and elaborate; nearly all the questions raised are discussed and the cases in the different states bearing on them cited. It will be noticed from an examination of the report, that counsel for the defendant in error concedes, and the court assumes, that the franchise could not have been taken from one corporation for profit under the right of eminent domain in the state, and vested in another private corporation of the same kind for profit; the public use is made to depend on the fact, that thereafter it was to be free. It was, therefore, not a transfer of the franchise and property of one corporation for profit to another of like character, but a taking for a purely public use. In the constitutions of nearly all the states, their bills of rights and eminent domain articles are substantially the same as ours; in all their courts on questions, such as the one before us, Bridge Co. v. Dix, supra, has generally been cited and approved. It has been cited with approval in our own court in the cases

already noted. In re Towanda Bridge Co., 91 Pa. 216, is an exactly similiar case in its essential facts.

It in effect decides, that the growing necessities of a progressive age must be met by the exercise of the state's power of eminent domain ; the public road appropriates the bridle path, the turnpike road the public road, the electric railway the turnpike road, the steam railroad the canal bed. And so this court held, so recently as Harrisburg, etc., Turnpike Road Co. v. Harrisburg, etc., Railway Company, 177 Pa. 585, where the railway company appropriated a small part of the roadbed of the turnpike company, under this same act of 1889; that the exercise of domain in that case, was, without doubt, constitutional. The use was changed and greatly enlarged for the benefit of the public by the younger corporation. But in no case have I been able to find in any of the states, a judicial judgment upholding the right of one corporation for profit to appropriate the property of another to exactly the same uses merely for the convenience and profit of the younger corporation. Take the case before us : both these corporations were chartered under the act of 1889, with precisely the same character of organization, the same privileges and immunities, .for the same purpose, the carrying of passengers ; the same motive power, electricity ; the same restricted right of domain, the highway or turnpike ; both are corporations for profit to be made from the patronage of the public for the same service. Where is the public use enlarged, or where is the public benefit enhanced by the younger corporation taking possession of the rails, poles and wires of the elder? It may be conceded, that the new corporation is benefited by the immediate possession of a roadway ready for traffic without the delay and vexation incident to building for itself ; and the 2,500 feet may be the most remunerative part of the older franchise ; a traffic may have been attracted to it by years of enterprise and business tact. Under such circumstances, it is called upon to give possession of its property to the new corporation, not for a real public use, but for the advantage and profit of the new. It cannot be argued, that the public will have increased service ; no more cars can be run by two companies on two rails than by one company ; if the necessities of the public demand additional cars, it is to the profit of the old company to supply them

to the extent of its rail capacity. The effect, the only effect, of this 14th section and the amendment is, to transfer the property of one private corporation to a new one, for the same public use, both being transporters of passengers for profit.

The transaction is not, in substance, different from the transfer of one farmer's land to his neighbor, under an assumed right of eminent domain, which has not the shadow of warrant in the constitution. To illustrate, let us suppose another case, which if this claim be sustained might easily become a real one. The Pennsylvania, Philadelphia & Reading, and Baltimore & Ohio are all steam railroads for passenger and freight traffic entering the city of Philadelphia, with terminal stations near its center; for five miles and more each has, at immense expense through years of enterprise, built up a very large and probably remunerative traffic on the few miles of road next their terminal stations. Suppose another road or roads organized, as they may and can easily be, under the general railroad law of 1868 with an eastern terminal at Philadelphia; they can approach to within a few miles of the city without serious difficulty; but the cost of entering, by reason of the very great value of property, would necessarily be very large. Would the legislature, under the assumed right of eminent domain, pass an amendment to the act of 1868 authorizing the new company to take possession jointly with the old company of five miles of the older company's tracks, that it might for the benefit of the public secure an entrance into the city? Of course, there would have to be some proceeding adopted for assessing and paying the damage to the older company, but how estimate the damage; the old companies run all the cars they can on their tracks now; the new company's cars would merely crowd the old ones or part of them off their own road; the public would in no sense be benefited by this, unless traveling to the same point over the same road in cars owned by another company would be a benefit. It is obvious, that such an amendment would not be founded on any necessity of, or even convenience to, the general public, but on the desire of and the temptation to the new company from a business point of view, to take possession of the franchise and property of the old one, a desire which could only be attained, by the assumed exercise of the power of eminent domain in favor of the new

corporation by the state. It would be a perversion of or a tyran-. nical exercise of the power of eminent domain by the sovereign, not for a public use, but for the private and corporate gain of the new corporation. It would not be sustained under the fundamental law of any of our states ; it could not be sustained under ours ; yet I am unable to discover, wherein the supposed case materially differs in its controlling facts from the one before us.

If it be argued, that by the progress in methods of transportation and the increasing wants of the people, an imperative necessity for increased means of rapid communication for both business and social purposes has arisen, we grant it ; but how is the necessity to be met ? Not certainly, by a violation of the rights of property guaranteed by the constitution, but by a reasonable and long exercised lawful power of eminent domain. Surely, there are other streets and highways besides the narrow strip already occupied by appellant ; other land wide enough on which appellee can lay its rails and erect its poles. If it be said, that under the act of 1889 the domain of the street railway is restricted to the highway, that is no answer ; the same power which restricts can enlarge ; the same assumed power which gives the right to take property already appropriated under a prior grant, can lawfully confer domain without restriction on property not so appropriated ; in fact, there is no serious obstacle in the way of multiplying and constructing electric railways to meet every reasonable public demand for them. If the necessary cost of construction be an insuperable obstacle, unless property rights of like corporations be disregarded, then there is not that public use to be met which within the meaning of the constitution warrants the granting of eminent domain ; a reasonable expectation of public patronage will always tempt investment of capital. If, however, under the law, the investment can be put in constant peril by the demands of newer corporations for the property of the older, it may well be doubted, whether in the end the public would not suffer from the refusal of capital to invest in improvements for public use. Capitalists will take the risk, that in the indefinite future, their franchise and property may be taken to answer the public necessities and demands for a newer and more improved method of travel and communication ; it is doubtful

whether they would readily take the risk of the appropriation of their franchise and property by every organization instituted for precisely the same purpose under the general act of 1889; for there would then be no limit to the extent of the appropriation, except the cupidity of the new company and the will of the legislature; it was first 500 feet, then 2,500, or nearly half a mile; next it may be a mile or more. Nor is there any limit to the number of railway companies organized subsequently, which under the pretense of public use may take possession of the property of the older one; as many as choose to organize under the act can claim the same right. What we have said disposes of appellants' third objection in the court below and the eighth assignment of error here.

The second assignment of error avers that section 14 of the act is unconstitutional because it provides no adequate security for damages to the appellant for the taking of its property. This part of the section was declared unconstitutional in Turnpike Road Co. v. Railway Co., supra, for the same reason set out in this assignment of error; it would not therefore, be necessary to notice this, were it not, that the able counsel for appellee, in effect, undertake to reargue that case and intimate that it was hastily and as a consequence erroneously decided. This is a mistake; the case was fully argued and deliberately considered; the citation of authorities was not so full, especially as to those from other states with constitutional provisions like unto ours in section 8, article 16: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction." It was held in that case, that the provision directing, that the right to use the tracks should vest in the petitioning company on the payment of the preliminary award of viewers into court, was unconstitutional, because it did not meet the requirements of section 8, article 16, and this point was sustained. The opinion is by the late Justice WILLIAMS, and was concurred in by all of the members of the court who sat at the argument. It was held, that the payment into court of the amount awarded by the viewers, which amount might be

doubled or trebled by a common pleas jury was not the security demanded by the constitution, especially, as such payment in effect vested immediate possession of the property taken in the petitioner. Most of the cases in this state bearing on the question were cited by one side or the other; those now presented by appellee's counsel from other states were not cited, nor, if they had been, do we think they would have produced a different result. The provision in the constitution of New Jersey, as quoted, is nearly the same as ours, but assuming them to be substantially the same, we adhere to our construction of this provision, as announced in Turnpike Road Co. v. Railway Co., supra. A constitution, unlike a statute, is not to receive a technical construction, but that, which we may infer was given by the people who by vote approved it: Cronise v. Cronise, 54 Pa. 255. By this act, "just compensation," is to be fixed by a preliminary board of viewers; this may fall far short of what is just, as determined by a common pleas jury; the payment of the amount into court, at this stage of the proceedings, may not be half just. Our own judicial observation, therefore, impelled us to such interpretation of section 8 as announced in the case cited; the experience of other judges of courts of other states may not have led them to the same conclusion, but their conclusions in no way change our experience, or the conclusions derived therefrom, in the interpretation of this section.

The suggestion, that as appellant owes its corporate existence to the act of 1889, it cannot now deny the constitutionality of section 14 with its amendment, is without force. This section, both in its purpose and effect, is a distinct legislative enactment; if it be completely eliminated all the other provisions stand in full force; and such is the scope of our decisions in Lockhart v. Craig Street Railway Co., 139 Pa. 419, and Homestead Street Railway Co. v. Pittsburg, etc., Electric St. Ry. Co., 166 Pa. 162. In neither of those cases, however, were the objections now passed upon raised to the 14th section. Leaving out this section the act stands as a whole complete in its parts; many organizations have been had under it since the decision in Turnpike Road Co. v. Railway Co. announced in 1896; neither the incorporators, nor the courts, have doubted the lawfulness of their organization because of the invalidity of that part of this section passed upon; nor are they, nor any

other railway companies under the act, affected by that decision or this, except, in so far as they are barred from taking possession of another company's tracks, poles and wires by right of eminent domain. Appellant owes its existence to the act of 1889, so far as that act itself had life ; it derives no being in whole or part from a dead section of it ; it neither affirmed nor denied the validity of it when it took out its charter under the lawful enactments of the general act.

Appellee claims possession of 800 feet of the tracks, poles and wires of appellants' railway under the amendment of May 21, 1895 ; it must stand on this act or it has no standing at all to assert its claims to 800 feet. At the date of appellant's organization the act of 1895 had no existence. So this point has no place in this issue. We do not intimate an opinion upon it; but this is very clear, that when appellant organized under the act of 1889, it did not thereby impliedly consent to an unconstitutional condition not imposed by the legislature until years afterwards.

The decree of the court below in appointing the viewers as well as all the other proceedings on the petition are reversed and set aside at costs of appellee.