STIERLE and another, Appellants, vs. ROHMEYER, Administratrix, and others, Respondents.

*March 5—April 30, 1935.*

150

30]

For the appellants there were briefs by *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

*Chas. E. Briere* of Wisconsin Rapids, for the respondents.

FOWLER, J. Secs. 241.13 and 241.15, Stats., prescribe the procedure to subject property covered by a chattel mortgage to the mortgage debt without the consent of the mortgagor. The former provides that notice of the sale must be given to the owner of the equity of redemption. The latter provides for the filing within a specified time after the sale with the register of deeds of an affidavit reporting the sale and containing specified facts relating thereto. Each section provides that for violating any provision thereof the owner of the equity may recover damages sustained through the violation and a penalty of $25, and that the debt secured by such mortgage shall be deemed fully satisfied and the mortgage canceled.

For omission to comply with these statutes, of whose existence the plaintiffs were ignorant and left the matter to be handled by an attorney at law, a debt of about $5,000 principal and interest, upon which property of the value of only $260 was taken to apply, was adjudged satisfied, the lien of a

real-estate mortgage executed as security for the debt was adjudged discharged, the complaint was dismissed, and the plaintiffs were mulcted for $163 in damages besides. Thus, the law as administered has deprived the plaintiffs of about $4,900, and transferred their property of that value from them to the defendants. We are to decide whether this adjudication can be upheld. If the statute is valid, it must be, in the main at least, according to a prior decision of this court.

The penalizing provision of these statutes or the like of it is not to be found in the statutes of any other state in the Union, and we venture to say that the like of it cannot be found among the statutes of any government that pretends to afford protection of the right of its citizens to hold private property. It has been several times before this court. The court has declared it drastic and highly penal, and that the statutes must be strictly construed. The constitutionality of these provisions has not heretofore been considered. It has been applied according to its terms, even in a case like the present, where both a real-estate mortgage and a chattel mortgage were given as security for the purchase price of farm machinery, and sale of the mortgaged property without compliance with the sections cited was held to satisfy the debt and to prevent foreclosure of the real-estate mortgage. *American Hardware Co. v. Moore,* 177 Wis. 190, 187 N. W. 996. In another case based on a land contract which was secured by a chattel mortgage, the court inferentially refused to allow the owner of property covered by the chattel mortgage the rights the statute by its terms conferred upon him. The suit was for an injunction to restrain waste by the vendee under the contract. It was set up in defense that the vendor-mortgagee had sold the personalty mortgaged and failed to comply with the statute. By the terms of the statute, the land contract debt was thereby paid, and, if so, the vendor had no right to restrain waste in order to protect his

security as vendor under the land contract. The court, in a *per curiam* decision, upheld an injunction issued by the circuit court. A dissenting opinion was filed by Mr. Justice BARNES, characterizing the penalty of the statute as "grossly excessive" and the statute as "shocking to the court's sense of right and justice," but saying, in effect, that the way to secure relief from the penalty was not to ignore it, but to enforce it, and thereby secure its repeal by the legislature. *Berntzon v. Edwardsen,* 161 Wis. 180, 152 N. W. 832. This case is not mentioned in the opinion in the *American Hardware Co. Case, supra,* although it was cited in the brief of respondent. The decision of the court in the *Berntzon Case* merely was:

"In this case, though the idea prevails that the order should be affirmed, there is such conflict of views as to the ground therefor, it is considered the general practice in such situation of pronouncing judgment of affirmance without any opinion being filed should be followed and such is the order."

None of the present court was a member when the case was decided, and we can only surmise as to the diversity of reasons for the affirmance. That the constitutional aspect of the statute has never been considered seems manifest. The penalizing provision is so outrageous in its effects in the present case, that its constitutionality should now be passed upon. If it is unconstitutional, it should now be so declared, else we become for the nonce a court for the perpetuation of errors rather than the correction of them.

That the penalizing provision is unconstitutional seems plain upon reflection and due consideration. It is stated in Cooley, Const. Lim. (7th ed.) pp. 505–508:

"When the government through its established agencies [whether by courts, administrative bodies or the legislature] interferes with the title to one's property, . . . and its action is called in question as not in accordance with the law of the

land [due process], we are to test its validity by those principles of civil liberty and constitutional protection which have become established in our system of laws. . . . Due process of law in each particular case means, such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs. . . . There is no rule or principle known to our system under which private property can be taken from one person and transferred to another, for the private use and benefit of such other person, whether by general law or by special enactment. The purpose must be public, and must have reference to the needs or convenience of the public, and no reason of general public policy will be sufficient to validate other transfers when they concern existing vested rights."

The principles thus enunciated by Cooley are applied to legislative enactments by the courts of the United States and the several states in the cases below cited and many others. They were enunciated by the supreme court of the United States in *Bank of Columbia v. Okely,* 4 Wheat. 235, 244, 4 L. Ed. 559, where it is said, in reference to the phrase "The law of the land," which is uniformly held equivalent to the phrase "due process of law" as used in the Fourteenth amendment to the constitution of the United States:

"As to the words from Magna Charta, incorporated into the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this: That they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice."

This idea is again expressed in *Barbier v. Connolly,* 113 U. S. 27, 31, 5 Sup. Ct. 357, 359:

"The Fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its juris-

diction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights."

It is under these principles and this concept of "due process" that the supreme court of the United States has held that legislatures cannot prescribe confiscatory rates for public service (*Covington & L. Turnpike Co. v. Sanford,* 164 U. S. 578, 17 Sup. Ct. 198), or compel a railroad company to permit against its will the construction of an elevator upon its right of way to compete with other elevators situated thereon operated by its lessees (*Missouri Pacific R. Co. v. Nebraska,* 164 U. S. 403, 17 Sup. Ct. 130), as said on page 417 of the opinion in this case:

"The taking by a state of the private property of one person or corporation, without the owner's consent, for the private use of another, is not due process of law, and is a violation of the Fourteenth Article of Amendment of the Constitution of the United States."

It is under this concept of due process that state courts have held that property rights cannot be taken from one person and transferred to another by legislative action, in whatever form those rights may be. *Gilman v. Tucker,* 128 N. Y. 190, 28 N. E. 1040; *New England Trout & Salmon Club v. Mather,* 68 Vt. 338, 35 Atl. 323; *Dennis v. Moses,* 18 Wash. 537, 52 Pac. 333; *Rockwell v. Nearing,* 35 N. Y. 302; *Taylor v. Porter,* 4 Hill (N. Y.), 140, 147, 40 Am. Dec. 274; *Williams v. Village of Port Chester,* 72 App. Div. 505, 76 N. Y. Supp. 631, 635; *Kinney v. Beverley,* 2 Hen. & M. (12 Va.) 318, 336; *Quimby v. Hazen,* 54 Vt. 132, 140; *State ex rel. Chapman v. Medical Board,* 34 Minn. 387, 26 N. W. 123; *Meffert v. State Board,* 66 Kan. 710, 72 Pac. 247; *Brown v. Board of Levee Comm'rs,* 50 Miss. 468, 479.

This principle was early forcibly stated and applied by this court to a legislative act, in *Culbertson v. Coleman,* 47 Wis. 193, 2 N. W. 124, where it is said at page 198 of the opinion:

"An attempt on the part of the legislature to transfer the property of A. to B. without A.'s consent, either with or without compensation, is a violation of the spirit if not the letter of the constitution of this state, which provides that 'the property of no person shall be taken for public use without just compensation therefor' (art. I. sec. 13, Const. of Wisconsin; *Newcomb v. Smith,* 2 Pin. 131) ; and if this act had been passed since July 28, 1868, it would have been a clear violation of the Fourteenth amendment of the constitution of the United States, which provides, among other things, 'that no state shall deprive any person of life, liberty or property, without due process of law.' *Rowan v. State,* 30 Wis. 129, 146.

"It is quite clear, within all the decisions upon that question, that the mere fiat of the legislature transferring the property of A. to B. is not due process of law within the meaning of that provision of the constitution of the United States."

After citing *Powers v. Bergen,* 6 N. Y. 358, in support of the decision, the opinion states:

"In *Wilkinson v. Leland* (2 Peters, 657), the late Judge STORY says: 'The fundamental maxims of a free government seems to require that the rights of personal liberty and private property should be held sacred. At least, no court of justice in this country would be warranted in assuming that the power to violate and disregard them—a power so repugnant to the common principles of justice and civil liberty—lurked under any general grant of legislative authority, or ought to be implied from any general expressions of the will of the people. The people ought not to be presumed to part with rights so vital to their security and well being, without very strong and direct expressions of such an intention.' He added: 'We know of no case in which a legislative act to transfer the property of A. to B. without his consent has ever been held a constitutional exercise of legislative power

in any state in the Union. On the contrary, it has been constantly resisted as inconsistent with just principles, by every judicial tribunal in which it has been attempted to be enforced.' "

While the statute involved in the *Culbertson Case, supra,* was a more direct attempt by the legislature to authorize the transfer of one man's property to another, it would, if upheld, have no more effected that purpose than would the instant statute. That cannot be done indirectly which cannot be done directly.

In the later case of *State ex rel. Milwaukee Medical College v. Chittenden,* 127 Wis. 468, 506, 107 N. W. 500, it is stated:

"Due process of law does not mean merely according to the will of the legislature. . . . It means according to the law of the land, including the constitution with its guarantees and the legislative enactments and rules duly made by its authority, so far as they are consistent with constitutional limitations. It excludes all mere arbitrary dealings with persons or property."

We find no case parallel to the instant one. There being no like statutes in any other state, that cannot be expected. The case most nearly parallel is that of *Dennis v. Moses, supra,* wherein a statute declaring that "In all proceedings for the foreclosure of mortgages hereafter executed, or on judgments rendered upon the debt thereby secured, the mortgagee or assignee shall be limited to the property included in the mortgage." This statute was held unconstitutional as taking property without due process. If that statute was unconstitutional, with greater reason is the instant one, which denies to the mortgagee the appropriation of the mortgaged property (the real estate) to satisfaction of the mortgage debt.

Another case in point by analogy is *In re Flukes,* 157 Mo. 125, 57 S. W. 545, which declared unconstitutional an act forbidding creditors to send choses in action outside the state

for collection by suit as violative of the due process clause of the Fourteenth amendment to the constitution of the United States, as well as the other provisions of that amendment. All citizens are entitled to the same right in the prosecution of suits to collect debts due them and to enforce their contracts. The appellants herein are entitled to the same right to collect the note secured by the real-estate mortgage, and to foreclose the mortgage, as is every other citizen to sue on a note or foreclose a mortgage. Whether he be denied that right by a statute directly so declaring, or by one declaring by legislative fiat a debt paid that is not paid, is immaterial. The effect is the same.

The penalizing provisions of the statute are not saved by the fact that the transfer of the property is to be effected under the guise of a penalty. It was held in Mississippi before the adoption of the Fourteenth amendment that a party could not be deprived of his property by a legislative declaration of forfeiture to the state for failure to pay the tax levied thereon, upon the general principle that this would be contrary to the fundamental principles of our state and federal governments. *Griffin v. Mixon,* 38 Miss. 424. The opinion quotes at pages 434, 435, from *Van Horne v. Dorrance,* 2 Dall. 309, 1 L. Ed. 391, where it is said with reference to appropriating private property for public use by the legislature:

"The English history does not furnish an instance of the kind. The parliament, with all their boasted omnipotence, never committed such an outrage on private property; and if they had, it would have served only to display the dangerous nature of unlimited authority; it would have been an exercise of power and not of right. Such an act would be a monster in legislation, and shock all mankind. The legislature, therefore, had no authority to make an act divesting one citizen of his freehold, and vesting it in another without a just compensation (nor even with it, except for *public* use, he afterwards adds). 'It is inconsistent with the principles of reason,

justice, and moral rectitude; it is incompatible with the comfort, peace, and happiness of mankind. It is contrary to the principles of social alliance in every free government; and lastly, it is contrary to both the letter and spirit of the constitution.' "

The supreme court of the United States has expressly held that a statute which by its terms exacts penalties beyond the bounds of reason is unconstitutional. *Southwestern T. & T. Co. v. Danaher,* 238 U. S. 482, 35 Sup. Ct. 886, 888; *Missouri Pacific R. Co. v. Tucker,* 230 U. S. 340, 33 Sup. Ct. 961, 963, 57 L. Ed. 1507; *Kansas City S. R. Co. v. Anderson,* 233 U. S. 325, 34 Sup. Ct. 599, 58 L. Ed. 983; *Ex parte Young,* 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 741; *Wilcox v. Consolidated Gas Co.* 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382. To the same point are *Ex parte Wood,* 155 Fed. 190; *Beckler Prod. Co. v. American Express Co.* 156 Ark. 296, 246 S. W. 1; *State v. Crawford,* 74 Wash. 248, 133 Pac. 590, 46 L. R. A. (N. S.) 1039. See note on this subject in 46 L. R. A. (N. S.) in connection with the report of the case last cited. In all of these cases, it is held that a penalty that is unreasonable in amount deprives the penalized party of his property without due process. The penalty here is clearly subject to the same condemnation as those involved in the cases cited. In the *Tucker Case, supra,* a penalty of $500 imposed by statute for charging a shipper a freight rate in excess of a statutory rate was held to render the penalty provision void. The opinion states:

"It will be perceived that this liability is not proportioned to actual damages. . . . As applied to cases like the present the imposition of $500 as liquidated damages is not only grossly out of proportion to the possible actual damages but is so arbitrary and oppressive that its enforcement would be nothing short of the taking of property without due process of law and therefore in contravention of the Fourteenth amendment."

In the *Danaher Case, supra,* it was held that a penalty of $6,300 assessed under a statute imposing a $100 a day penalty upon a telephone company for refusing to furnish service to a person requesting it, where the person was in arrears for prior service, "was so plainly arbitrary and oppressive as to be nothing short of a taking of its property without due process of law." The assessment in the instant case was equally "arbitrary and oppressive." A natural person is certainly as much entitled to the benefit of the rule as are railroad, express, and telephone companies.

The decisions of the United States supreme court that have upheld penalties as reasonable recognize the principle that to be upheld they must be reasonable. *Waters-Pierce Oil Co. v. Texas,* 212 U. S. 86, 29 Sup. Ct. 220, 53 L. Ed. 417; *Chicago & N. W. R. Co. v. Nye Schneider Fowler Co.* 260 U. S. 35, 43 Sup. Ct. 55; *Life & Casualty Ins. Co. of Tenn. v. McCray,* 291 U. S. 566, 54 Sup. Ct. 482, 485, 78 L. Ed. 984. In the last case cited, it is said that the principle applies "though the increment to the judgment be classified as penal, if the amount is not immoderate. The measure, not the name, controls." This court has enunciated the principle in *State v. Redmon,* 134 Wis. 89, 114 N. W. 137, as is shown below. It was held by the New Jersey court of appeals in *Cigarmakers' Union v. Goldberg,* 72 N. J. Law, 214, 61 Atl. 457, that due process of law requires that in the infliction of penalties by legislatures, the legislature should prescribe the amount of the penalty, or some definite standard for fixing the amount, or that the amount should be determined in a judicial proceeding instituted against the offender. The statute here involved, after fixing the amount of the penalty at $25 and the damages to the mortgagor, goes on to inflict as further penalty a forfeiture of the whole debt, whether it be $5,000 as here, or five cents in another case. The latter penalty has no relation whatever either to the injury inflicted upon the

debtor, to the turpitude involved in the statutory violation, or to any injury to the public. It is nothing but arbitrary expropriation, the taking of a creditor's property regardless of the amount or value thereof, and conferring it upon the debtor. It is inflicting on one person for the omission of a statutory duty a penalty different in amount from that inflicted on another person for violation of the same duty under the same circumstances, and is thus denying to persons the equal protection of the law.

It is contended the penalty provision may be upheld as an exercise of the police power. But statutes under the police power must be reasonable. This court said in *State v. Redmon, supra:*

"In general, as before shown, all police regulations must bear the judicial test of reasonableness under all the circumstances. This doctrine is being more and more emphasized as the number of police regulations multiply, evincing a tendency to fence in individual freedom as to matters not formerly so narrowed by legislative enactments. . . . Illustrative of that it is said in *Plessy v. Ferguson,* 163 U. S. 537, 16 Sup. Ct. 1138, that every legislative exercise of the police power must be reasonable, and in *Rideout v. Knox,* 148 Mass. 368, 19 N. E. 390, that reasonableness is one of the inherent limitations of such power."

It is said in *Bonnett v. Vallier,* 136 Wis. 193, 201, 203, 116 N. W. 885:

"A police regulation must not extend beyond that reasonable interference which tends to preserve and promote enjoyment, generally, of those 'unalienable rights' with which 'all men are endowed' and to secure which 'governments are instituted among men,' and must not violate any express prohibition or requirement of the state or national constitution. When it goes beyond the scope indicated and enters into the dominion of the destructive, it is illegitimate and offends against some constitutional restraint, express or implied, and though law in form, it is, as before said, not law at all, and whether an act purporting to be within the field of police

power is reasonable or not, in the ultimate, is a judicial question. There must be reasonable ground for the police interference and also the means adopted must be reasonably necessary for the accomplishment of the purpose in view. So in all cases where the interference affects property and goes beyond what is reasonable by way of interfering with private rights, it offends against the general equality clause of the constitution; it offends against the spirit of the whole instrument; it offends against the prohibitions against taking property without due process of law, and against taking private property for public use without first rendering just compensation therefor. . . .

" 'Reasonable,' as applied to a law, is manifestly not what extremists upon the one side or the other would deem, in the light of the principles referred to and the situation to be dealt with, fit or fair. It is what 'from the calm sea level,' so to speak, of common sense, applied to the whole situation, is not illegitimate in view of the end to be attained. In determining that, the court must look to the language of the statute and to all the facts bearing on the situation of which it may properly be said to judicially know because of their common nature or otherwise."

*State v. Redmon, supra,* also treats exhaustively of the police power, and points out that two things must exist to sustain a statute enacted in the exercise of this power. After quoting from *Lawton v. Steele,* 152 U. S. 133, 137, 14 Sup. Ct. 499:

" 'To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not *unduly oppressive upon individuals,*' " the court comments as follows:

"Controlling significance should be attached to the words above quoted, 'the interests of the public generally,' etc., 're-quire such interference.' Not that some individuals now and then, or even generally, demand it, or require it, but that the interests of the people generally require it. In other words,

that it is reasonably essential or necessary to such interests that the subject thereof should be dealt with by the legislature," and states that enactments under the police power must meet the test as stated by Freund, Police Power, § 143:

"Does a danger exist? Is it of sufficient magnitude? Does it concern the public? Does the proposed measure tend to remove it? Is the restraint or requirement in proportion to the danger? Is it possible to secure the object sought without impairing essential rights and principles?"

It is for the court to decide "whether it relates to a legitimate subject, or under the guise of doing so violates rights of persons or property." *Ibid.* 107. As stated in *Mugler v. Kansas,* 123 U. S. 623, 661, 8 Sup. Ct. 273, 297:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

The penalizing provision here involved does not meet the above test. If it be said that the public interest is so involved as to justify some penalty, all reasonable requirements in that regard are met by the $25 penalty and the stipulation as to recovery of all damages sustained. A greater penalty than $25 doubtless might reasonably have been imposed. Penalties of double or treble damages have been upheld. But to go to the extent here attempted in imposing the penalty under consideration is utterly unreasonable, "a palpable invasion of rights secured by the fundamental law" and "unduly oppressive," and it is our duty "to so adjudge and thereby give effect to the constitution."

It is urged that the penalty here involved should be sustained for the reason that property used in violating criminal

statutes may be confiscated by the state, as nets may be confiscated that are being used in violation of the fish and game laws, or automobiles may be confiscated that are being used in violating the revenue laws or might be that were used in violation of the statutes passed under the Eighteenth amendment. But here the mortgage and notes that the statutes declare satisfied and canceled were not being used in violation of law, nor were they in any way connected with it. Loaning money and taking a mortgage to secure the loan are lawful.

"Confiscation is either an act of penal justice for the punishment of great crimes against the state (Bl. Comm. 299), or the exercise of a belligerent right against the property of public enemies (Kent, Comm. 61–66); not the arbitrary seizure of the property of one person, whether citizen or stranger, for the benefit of another person."

*The Globe,* 10 Fed. Cas. pp. 480, 483, No. 5,484; *Skelly v. St. Louis & San Francisco R. Co.* 176 Mo. App. 156, 161 S. W. 877. Respondents' counsel, in his brief, attempts to distinguish between penalties and forfeitures, and contends that although penalties must be reasonable, forfeitures need not be. But a forfeiture is imposed as a punishment and is therefore a penalty. Black, Law Dictionary, 508, 4, 9.

"A forfeiture is a penalty by which one loses his rights and interest in his property" to another. 25 C. J. p. 1149, § 2 B.

It is also urged that as the unconstitutionality of the provisions was not raised in the court below, it will not be considered here. This is a general rule, but it is sometimes "more honored in the breach than in the observance." *Cappon v. O'Day,* 165 Wis. 486, 162 N. W. 655; *Braasch v. Bonde,* 191 Wis. 414, 211 N. W. 281; *Langen v. Borkowski,* 188 Wis. 277, 299, 206 N. W. 181; *Estate of Johnston,* 186 Wis. 599, 203 N. W. 376. Whether the court will consider a point not raised below "depends upon the facts and circumstances of the particular case." *Cappon v. O'Day, supra,* par. 2 of the syllabus. When the point is one of law, not at

all dependent on facts that might have been presented below had the point been there raised, no compelling reason is perceived why it may not be considered on review, and no reason is perceived why the constitutionality of the provision here involved should not be now considered and decided. The point has been fully and very ably briefed by counsel on both sides by direction of the court, and nothing more could possibly have been presented below than has been presented here.

Attempt is made to uphold the cancellation of the real-estate mortgage and the debt because, as it is said, the statutes were in force when the mortgagee made his contract and the penalty provision is thus incorporated therein. This would be true if the penalty provision were constitutional. But being unconstitutional, it is void; it is no law. "It confers no rights; it imposes no duties; it affords no protection; . . . it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County,* 118 U. S. 425, 6 Sup. Ct. 1121, 1125; *State ex rel. Kleist v. Donald,* 164 Wis. 545, 160 N. W. 1067; *John F. Jelke Co. v. Beck,* 208 Wis. 650, 242 N. W. 576. This is not a case of a statute being unconstitutional for impairing the obligation of contracts. Such a statute may be valid as to contracts made after its enactment, and in such case those who contract afterwards are deemed to have contracted subject to its terms and are therefore bound by it.

It is urged that the age of this penalizing provision entitles it to favorable consideration, and acquiescence in it for so long a period entitles it to stand. If its constitutionality were a close question, this suggestion might move the court to uphold it. But it appears to us that the provision is so clearly and so grossly violative of the fundamental principles of justice and constitutional law that its duration without attack heretofore should not influence us. Lapse of time, however long, cannot legalize an act that violates a constitutional provision. Cooley, Const. Lim. (7th ed.) p. 106; *Estate of Payne,* 208 Wis. 142, 242 N. W. 553. Mere deference to

legislative action should not move us to yield our opinion in a case so clear as this, especially because it is manifest that the legislature would not have enacted the drastic provision of these statutes had it had in mind cases such as we have before us. It is stated in the dissenting opinion in the *Berntzon Case, supra,* that what the legislature had in mind was the typical case of where a plaintiff "held a note and a mortgage on a cow for $40, and the property had been seized and sold and brought only $30 at the sale," and the legislature "was not thinking in large sums or about exceptional cases." If this case stands, so must the next, and the next might deprive bondholders of millions of dollars. It is a matter of common knowledge that bonds to the amount of millions have been issued and sold secured by mortgages on the largest hotels and apartment houses in the state covering the buildings and the lands on which they are situated and the furniture and furnishings therein. As to the furnishings, the mortgage is only a chattel mortgage. Should some of these furnishings be taken and sold under the chattel mortgage, and the requisite affidavits be filed eleven days after the sale instead of ten, it is not conceivable that the mortgage of the realty would be held satisfied and the bonds be held canceled, when the bondholders knew nothing of the seizure or the sale or the noncompliance with the statute. When things so monstrous as this are contemplated as within the language of the statutory provisions under consideration, it behooves us to heed the admonitions of sec. 22, art. I, of our state constitution:

"The blessings of a free government can only be maintained by a firm adherence to justice . . . and by frequent recurrence to fundamental principles,"

and to consider and determine whether the thing attempted is contrary to those principles.

It does not follow that because the provision of the statutes that the debt shall be deemed fully satisfied and the mortgage canceled is unconstitutional the rest of the statute is also.

This provision was originally enacted as an independent statute by ch. 294, Laws of 1887, and attached to the general chattel mortgage provisions in the revision of 1889 and thereafter continued in the subsequent revisions. It does not affect the other provisions of the two sections of the statutes with which it is connected. The statute declared unconstitutional is not the statute to which said ch. 294 was annexed in the revisions, but ch. 294, so far as it purported by legislative fiat to declare a debt paid that was not paid and to transfer one man's property to another. The provisions of said chapter imposing $25 and the actual damages to the mortgagor as a penalty to be recovered by the mortgagor should stand, as these provisions are separable from the other, and it cannot be said that the forfeiture provision induced the enactment of the others. See 5 Callaghan's Wis. Dig. p. 4858, §§ 22 and 23, and Suppl. p. 840.

The judgment appealed from should be reversed, and the cause remanded with directions to determine the amount due on the mortgage debt after crediting the damages and penalty adjudged for neglect to comply with the statutory provisions governing the sale of property under a chattel mortgage, and to enter judgment foreclosing the mortgage in suit.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for further proceedings in accordance with the opinion.

FRITZ, FAIRCHILD, and WICKHEM, JJ., dissent.