JOSEPH E. MOSES AND WIFE, JOSEPHINE MOSES v. STATE HIGHWAY COMMISSION.

(Filed 26 February 1964.)

**1. Appeal and Error § 2—**

Where the question sought to be presented involves property rights and relates to a matter of public importance, and a decision will aid State agencies in the performance of their duties, the Supreme Court may determine the appeal on the merits even though the appeal is from an interlocutory order and premature. G.S. 1-277, G.S. 1-278.

**2. Eminent Domain § 2—**

When plaintiffs are given access to the main highway by means of a service road abutting their property, the fact that the main highway is changed into a nonaccess highway does not constitute a "taking" of plaintiffs' property, either in depriving plaintiffs of direct access to the highway or in diminishing the flow of traffic having direct access to plaintiffs' property, the inconvenience resulting from the necessity of using a more circuitous route and any diminution in value to plaintiffs' property being incident to the exercise of the police power and *damnum absque injuria*. Constitution of North Carolina, Article I, § 17.

APPEAL by respondent from *Braswell, J.,* September 9, 1963, Civil Session of CUMBERLAND. This appeal was docketed in the Supreme Court as Case No. 605 and argued at the Fall Term 1963.

This is a condemnation proceeding. Petitioners seek damages because they have been denied immediate access from their property to Interstate Highway I-95, a controlled access road. Petitioners have access to the Interstate Highway by a service road connecting points fixed for entrance and departure from the Interstate Highway. This service road abuts the property of petitioners.

The court, based on stipulations of the parties and admissions in the pleadings, concluded petitioners were entitled to compensation. He remanded the proceeding to the clerk for the appointment of commissioners. Respondent appealed.

*Attorney General Bruton, Assistant Attorney General Lewis, Trial Attorney McDaniel, Quillan, Russ & Worth for respondent appellants.*

*Charles R. Williams, Robert B. Morgan, Morgan & Williams, A. R. Taylor for appellee.*

RODMAN, J.  An order directing the appointment of commissioners in a condemnation proceeding is interlocutory. It is not such a determination of the rights of the parties as permits a dissatisfied party to appeal. G.S. 1-277, *Board of Education v. Allen*, 243 N.C. 520, 91 S.E. 2d 180; *Veazey v. Durham*, 231 N.C. 357, 57 S.E. 2d 375. Nonetheless when, as here, the parties desire an answer to a question which is fundamental in determining their rights, is also of public importance, and when decided will aid State agencies in the performance of their duties, we will in the exercise of the supervisory jurisdiction given us, answer the question, G.S. 1-278; *Greene v. Laboratories, Inc.*, 254 N.C. 680, 120 S.E. 2d 82; *Edwards v. Raleigh*, 240 N.C. 137, 81 S.E. 2d 273.

The question now for decision arises on this factual situation: Prior to 1954, U. S. 301 was a North-South link in the primary system of federal highways. It was one hundred feet in width, with a paved area in the center for vehicular traffic. This paved area provided one lane for north-bound traffic and another for south-bound.

The Highway Commission, in order to convert 301 into an Interstate Highway, proposed to enlarge its right-of-way. It had, prior to 15 June 1954, surveyed and marked the proposed boundary of the enlarged highway.

On 15 June 1954, Joseph Moses purchased from D. A. Calhoun 1.7 acres. This tract is situate east of 301. Its western boundary is the line respondent had marked for the boundary of 301 when enlarged. In December, 1954, petitioners purchased an additional 2 acres from Calhoun. The description in the deed then made covers 3.7 acres. It includes the 1.7 acres purchased in June, 1954. Petitioners purchased the 3.7 acres for the erection and operation of a motel and restaurant. The western boundary of the 3.7 acres is more, than 100 feet east of the eastern line of 301 as it existed in 1954. The 3.7 acres is part of a larger tract owned by Calhoun. The western line of his property was the eastern line of 301. On 10 July 1957, Calhoun granted petitioners an easement to cross his land lying between the 3.7 acres and the highway.

In August, 1959, respondent purchased from Calhoun the land lying between petitioners' 3.7 acres and the boundary of 301 as it existed in 1954. This purchase was made to enlarge 301 and make it a "controlled access," Interstate Highway, with four lanes for through traffic. These lanes are near the center of the right-of-way. Beyond the through traffic lanes are "service roads." These service roads are separated from the inner lanes by a fence. Abutting property owners gain access to the inner

lanes by use of .the service roads. Interstate, controlled access highways are constructed under congressional and legislative authorization. Federal Aid Highway Act of 1956, (70 Stat. 374); 23 U.S.C.A. 111, c. 993, S.L. 1957, codified as G.S. 136-89.48 *et seq..*

A motorist traveling south on the inner lane must, in order to reach petitioners' motel and restaurant, travel 1.65 miles further than he would if allowed direct access to their property. A motorist traveling in the northbound lane to get to petitioners' property must travel .65 miles further than he would if given direct access.

If the denial of immediate access to the inner traffic lane is a taking of property compensation must be paid. N.C. Constitution, Art. I, Sec. 17; *Williams v. Highway Commission,* 252 N.C. 141, 113 S.E. 2d 263; *Braswell v. Highway Commission,* 250 N.C. 508, 108 S.E. 2d 912; but if the substitution of a service road for the direct access theretofore enjoyed is an exercise of the police power, any diminution in the value of petitioners' property is *damnum absque injuria. State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660; *Morris v. Holshouser,* 220 N.C. 293, 17 S.E. 2d 115; *Roach v. Durham,* 204 N.C. 587, 169 S.E. 149.

Abutting property owners having a private access to a highway cannot be denied the right to enter and use a road constructed for public benefit.

Petitioners do not claim a denial of access; they merely assert access to a portion of the highway is less convenient now than in 1957 when they acquired a right-of-way across land subsequently acquired by respondent. In fixing the line marking the boundary between public and private rights, we are reminded of what Seawell, J., said in *Mosteller v. R. R.,* 220 N.C. 275, 17 S.E. 2d 133:

> "Ancient doctrines pertaining to roads of the horse and buggy days, when those roads were for the most part trails through the woods and fields, must be applied to modern conditions with caution and sound discrimination. Once, 'ingress and egress' were practically all such a road afforded, and there is logic in the thought that it is all of such a doctrine which should survive. Today roads have been multiplied and expanded into such luxurious proportions that the expression, 'once a road, always a road'—if we attach to it the significance given it by plaintiffs—will give to the abutting owner in a vacated road, if he takes all of it, an easement wholly beyond his necessities and not within the reasonable application of the doctrine.
>
> "The trend of judicial decision where this doctrine is recognized is decidedly toward confining such a right to the necessity of egress and ingress."

Our statutes, G.S. 20-156 (a), (requiring one entering a highway from a private way to yield the right of way) and G.S. 20-165.1, (authorizing the establishment of one way streets and roads) illustrate the power of the State to regulate the time and manner of entering a public highway. Although the State may change the grade of a road making immediate access more difficult, such a change and the resulting inconveniences caused the property owner is not a compensable injury. *Smith v. Highway Commission,* 257 N.C. 410, 126 S.E. 2d 87; *Thompson v. R. R.,* 248 N.C. 577, 104 S.E. 2d 181; *Calhoun v. Highway Commission,* 208 N.C. 424, 181 S.E. 271.

All of these things may require an abutting owner to travel a greater distance to get to his destination. The law applicable to such changes and regulations was stated in *Sanders v. Smithfield,* 221 N.C. 166, 19 S.E. 2d 630. It is there said:

"It is generally held that the owner of abutting property has a right in the street beyond that which is enjoyed by the general public, or by himself as a member of the public, and different in kind, since egress from and ingress to his own property is a necessity peculiar to himself . . .

"Where there is no actual encroachment on the property, but only the question of interference with the appurtenant easement, since the right itself springs out of and attaches to the use of a public facility, conservative opinion tends strongly to limit it to such reasonable recognition as will meet the exigencies involved in the owner's use of his property, and yet will not unduly restrict the government in functioning for the public convenience and necessity.

"It is understood that absolute equality of convenience cannot be achieved, and those who take up their residence or purchase and occupy property in proximity to public roads or streets do so with notice that they may be changed as demanded by the public interest. To justify recovery in such case, the damages must be direct, substantial and proximate, and not such as are attributable to mere inconvenience—such as being compelled to use a longer and more circuitous route in reaching the premises. McQuillan, *op. cit., supra,* § 1527 (1410). It is not enough that the vacation results in some inconvenience to his access, or compels a more circuitous route of access, or a diversion of traffic from the premises, or a consequent diminution in value. 18 Am. Jur., Eminent Domain, sec. 225. An inconvenience of that nature is held to be no different in kind, but merely in degree, from that sustained by the general public, and is *damnum absque injuria.*"

The basic principle that an abutting property owner is not entitled to compensation because of circuity of travel resulting from a limitation on the direction in which traffic may move, was reiterated in the thoughtful opinion of *Bobbitt, J.* in *Barnes v. Highway Commission,* 257 N.C. 507, 126 S.E. 2d 732. Reference is made to the opinion for the numerous cases cited to support the conclusion there reached.

Petitioners' contention that they are entitled to compensation because of the decreased number of travelers who use that portion of the highway affording direct access to their property is likewise without merit. If petitioners could collect because of such diminution in travel by their property, so could every merchant in a town when the Highway Commission constructed a by-pass to expedite the flow of traffic. The true rule with respect to such relocation or change in construction was, we think, aptly stated by the Supreme Court of Vermont in *Nelson v. State Highway Board,* 1 A 2d 689, 118 A.L.R. 915. The Court there said:

> "[T]he State owes no duty to the Nelsons (property owners) in regard to sending public travel past their door. Our truck line highways are built and maintained to meet public necessity and convenience in travel and not for the enhancement of property of occasional landowners along the route. Benefits which come and go with changing currents of public travel are not matters in which any individual has any vested right against the judgment of those public officials whose duty it is to build and maintain these highways."

The revamping of our highway system, making it useful if needed for both national defense and as a safe and economical means of rapid interstate travel, has created many problems for the property owner as well as the agencies charged with the responsibility of constructing and maintaining that system. Naturally these problems have produced much litigation.

An examination of these cases and of treatises by members of the Bar who have made a particular study of the problem will, we think, show the decided weight of opinion supports the conclusion we reach; i.e., an abutting property owner is not entitled to compensation because of the construction of a highway with different lanes for different kinds and directions of traffic, if he be afforded direct access by local traffic lanes to points designated for access to through traffic. See *Abdalla v. Highway Commission, Ante,* 114, 134 S.E. 2d 81; *State v. Danfelser,* 384 P, 2d 241; *Stefan Auto Body v. State Highway Commission,* 124 N.W. 2d 319; *Nick v. State Highway Commission,* 109 N.W. 2d 71; *Arkansas State Highway Commission v. Bingham,* 333 S.W. 2d 728; Covey: *Control of Highway Access,* 38 Neb. L. Rev., 407; Anderson: *Control of Access by*

*Frontage Roads—Police Power or Eminent Domain?*, 11 Kan. L. Rev., 388; Covey: *Frontage Roads: to Compensate or not to Compensate*, 56 N.W.U.L. Rev. 587; Levin: *Federal Aspects of the Interstate Highway Program*, 38 Neb. L. Rev. 377.

Because of the public importance of the question presented, we have treated the subject without regard to the provisions contained in the deed granting petitioners an easement. This deed was executed subsequent to the enactment of Chapter 993, S.L. 1957, (Art. 6D c. 136 of the General Statutes). In examining it we are led to the conclusion that both petitioners and their grantors understood the law to be as we have here declared. The easement then granted was to continue only "until such time as the said land shall be conveyed to or taken by the State Highway and Public Works Commission for highway purposes with adequate access allowed to second parties for the operation of their motel and restaurant business." It is further provided in the deed, "In case said land is taken by condemnation, first parties shall be entitled to and hereby reserve for themselves, their heirs and assigns, the right to the entire award for damages resulting from such condemnation, except damages, if any, for severance from said 3.7 acres of land in case adequate access is not available to the second parties, their heirs and assigns, and in such event, the said second parties shall be entitled to severence damages for loss of adequate access to *said highway.*" What highway were the parties talking about? Certainly they were not talking about 301 as it existed at the time of conveyance. The recitals in the deed show that they anticipated the enlargement of the highway in the immediate future. Petitioners do not contend that they do not have direct and immediate access to the new highway. That access is provided by the service roads. These service roads are part of the highway system. They serve not only the petitioners but any member of the public who desires to use the same. These service roads connect with fixed points by which the traveler may enter the north or southbound through stream of traffic.

Since petitioners have not suffered a compensable injury, the order appointing commissioners to ascertain the amount of compensation owing petitioners must be and is

Reversed.