SOUTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Plaintiff
and Appellee,

v.

Glenn FREEMAN, Richard Kirsch, and
Badland's Enterprises, Inc., a corpora-
tion, Defendants and Appellants,

and

Donald Schreeve and Kay
Schreeve, Defendants.

No. 14969.

Supreme Court of South Dakota.

Considered on Briefs Aug. 1, 1985.

Decided Nov. 27, 1985.

Carl W. Quist, Asst. Atty. Gen., Pierre, (Mark V. Meierhenry, Atty. Gen., Pierre, on brief), for plaintiff and appellee.

Robert A. Sambroak, Jr., Kadoka, for defendants and appellants.

WUEST, Acting Justice.

Appellants seek to appeal from an order determining the necessity of the taking of a highway billboard by the State Department of Transportation (DOT). DOT moved to dismiss the appeal, claiming it is an intermediate order not appealable as a matter of right. We grant the motion.

DOT commenced a condemnation proceeding to acquire a highway billboard owned by appellants. Appellants requested a hearing in circuit court on the issue of the necessity of acquiring the property. The trial court entered an order finding necessity for DOT's resolution to take the billboard. Appellants appealed from this order without petitioning the court to appeal from an intermediate order. SDCL 15–26A–3(6) provides for appeals from intermediate orders upon petition, pursuant to SDCL 15–26A–13, not as a matter of right but of sound judicial discretion. Appellants claim they may appeal as a matter of right under SDCL 15–26A–3(2), which provides for an appeal of right from any final order affecting a substantial right, made in any action, when such order in effect determines the action and prevents a judgment from which an appeal might be taken.

In the case at bar, no proceedings have been held determining the just compensation to which appellants are entitled. Hence, no final judgment has been entered.

This court has consistently held that the right to appeal is statutory and no appeal may be taken unless a statute clearly authorizes one.

An appeal may not be taken from an order unless it is authorized by one of [the provisions of SDCL 15–26–1]. *Wilge v. Cropp*, 74 S.D. 511, 54 N.W.2d 568

[ (1952) ]. An attempted appeal from an order from which no appeal lies is a nullity, *Deere & Webber Co. v. Hinckley,* 20 S.D. 359, 106 N.W. 138 [ (1906) ], and confers no jurisdiction on this court, except to dismiss it.

*Oahe Enterprises, Incorporated v. Golden,* 88 S.D. 296, 299, 218 N.W.2d 485, 487 (1974) (*now see* SDCL 15–26A–3); *see, e.g., County School Board v. Cottonwood Sch. Dist. No. 41,* 81 S.D. 530, 137 N.W.2d 882 (1965).

South Dakota has no specific statutes governing appeals in condemnation cases. *See* SDCL 21–35–20 (appeals in condemnation actions to be taken the same as in other civil actions) and SDCL 31–19–21 and 31–19–40 (ch. 31–19 cumulative and additional to ch. 21–35), *cf., e.g., Houser v. Olmstead,* 57 S.D. 41, 230 N.W. 224 (1930) (no appeal could be taken by taxpayers to the circuit court from an award of damages by appraisers).

SDCL 21–35–20, however, limits appeals in condemnation cases by providing they "shall not prevent or delay the work or improvement involved" providing a deposit and bond are furnished for payment of compensation awarded. Further, SDCL 31–19–24 provides that title vests in the state when a declaration of taking has been filed pursuant to SDCL 31–19–23 on the date the hearing is held on the resolution of necessity, or when the hearing is waived. *See* SDCL 31–19–10.1. Further, SDCL 31–19–38 provides no appeal in any cause under SDCL 31–19–23 to SDCL 31–19–34 shall operate to prevent or delay vesting of title, interest or possession to lands acquired by the state under those statutes. We mention these apparent limitations on appeals in condemnation cases not because they present any issue in this case but to indicate they have not been overlooked in arriving at our decision herein. Possibly, they may cause a different result than our decision in this case, but we will decide those issues when presented.

In arguing that the order in this case is appealable under SDCL 15–26A–3(2) as a matter of right, appellants rely on *County*

*of Blue Earth v. Stauffenberg,* 264 N.W.2d 647 (Minn.1978). In *Blue Earth,* the court reconsidered its earlier decisions and held: "Henceforth, in a condemnation proceeding where the issue of public necessity has been determined by the district court, an aggrieved party may appeal directly to [the supreme court] from the district court order." 264 N.W.2d at 650. Although the Minnesota rule of appellate procedure, RCAP 103.03, specifies the kinds of orders and judgments that may be appealed from as a matter of right, the court did not cite which subsection of the rule it was relying on in deciding *Blue Earth.* In a subsequent decision, the court admitted that it was allowing a direct appeal even though its rule of appellate procedure did not provide for such a direct appeal. *Alexandria Lake Area Service Region v. Johnson,* 295 N.W.2d 588 (Minn.1980).

In later explaining its decision in *Blue Earth,* the Minnesota Supreme Court said: "The [Blue Earth] holding was based on the rationale that the allowance of appeals from a district court order determining necessity would serve to preclude the waste of judicial economy if the initial taking were to be invalidated." *Alexandria Lake Area Service Region,* 295 N.W.2d at 590. This rationale considers only the use of judicial resources at the trial court level, however, and ignores the use of judicial resources at the appellate level where piecemeal appeals could occur, one appeal from the determination of necessity and one from the determination of compensation.

In some cases, general statutes granting appeals have been applied by courts that have considered the issue of whether an appeal may be taken from an order determining only the necessity of the taking or the right to take. In *Arp v. State Highway Com'n,* 567 P.2d 736 (Wyo.1977), the Wyoming Supreme Court applied its statute that defines "final order," WRCP 72(a). The court dismissed the appeal and held that the order determining the necessity and good faith of the taking was not appealable because it was not a "final order"

within the definition of the statute. Arizona's statute specifying the judgments and orders that are appealable as a matter of right to its court of appeals is remarkably similar to SDCL 15–26A–3. 4A Ariz.Rev. Stat. 12–2101. Under Arizona's statute, the court of appeals has held that an appeal could not be taken from an order determining the propriety of a taking and leave the question of compensation for trial. *Cordova v. City of Tucson*, 15 Ariz.App. 469, 489 P.2d 727 (1971). In dismissing the appeal, the Court said:

> The subject order is neither a 'final judgment,' a 'final order,' a 'special order made after final judgment,' nor an 'order affecting a substantial right' which in effect determines the action and prevents judgment from which an appeal might be taken....
>
> In so holding, we do not mean to intimate that judicial relief at this juncture of a condemnation proceeding is absolutely barred. Although no rights of appeal exist, judicial intervention by way of special action may be available to avoid the serious economic waste which would result from a long drawn-out trial when the condemning authority has no right to condemn the land in question.

15 Ariz.App. at 470–71, 489 P.2d at 728–29. Thus, the *Cordova* Court also had economic considerations in mind, as did the Minnesota Court in *Blue Earth, supra*, but it reached a different result. The *Cordova* Court also cites authorities from several other jurisdictions in accord with the view that an order adjudicating the right to condemn is not appealable. *E.g., People ex rel Dept. of Public Works v. Rodoni*, 243 Cal. App.2d 771, 52 Cal.Rptr. 857 (1966); *Big Horn Coal Company v. Sheridan-Wyoming Coal Company*, 67 Wyo. 300, 224 P.2d 172 (1950), cited in *Arp, supra*. The court also relied on 6 J. Sackman, Nichols on Eminent Domain § 26.32 (3rd ed. 1984), in which the author acknowledged that there is some conflict on the question of when an appeal should be taken in a condemnation action.

> When, however, the trial court adjudges that the petitioner has established its right to condemn the designated land, the order does not finally dispose of the proceedings, because there can be no judgment of condemnation until damages have been assessed. The rule at common law is that a writ of error does not lie except to a judgment which determines the entire controversy between the parties, and the courts have generally in accordance with this principle discouraged the review of a cause piecemeal. For this reason it is held in some jurisdictions that, unless it comes within some special statute, an order adjudging that the petitioner has the right to condemn is interlocutory only and not subject to appeal, and so the points of law involved in the adjudication cannot be heard by an appellate court until there has been a final judgment of condemnation. The right of the owner to be heard by an appellate court upon the points of law involved in the adjudication of the right to take is, of course, not lost, but merely deferred until there is a decision of the trial court on the merits, confirming the award of compensation. Such a decision is a final judgment and may be reviewed as such, both upon the validity of the taking and upon the questions of law arising at the trial in which the amount of compensation was determined. The final decree in a condemnation proceeding is the order or decree which includes the amount of the awards and the names of the owners to whom payable.

6 J. Sackman, Nichols on Eminent Domain at § 26–243 to 26–247 (footnotes omitted).

We conclude the motion to dismiss shall be granted, but the order may be reviewed after final judgment. SDCL 15–26A–7 provides on appeal from a judgment the Supreme Court may review any order, ruling, or determination of the trial court.

FOSHEIM, Chief Justice, concurs.

MORGAN, Justice, concurs in result.

HENDERSON, Justice, dissents.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not participating.

MORGAN, Justice (concurring in result).

I concur in the result of the majority decision. The decision does not pick up the basic error that I perceive in this case. That error, however, does not mandate reversal on procedural grounds; nor does it rise to constitutional dimensions in my view.

Stripped of all the ostentations, the purported constitutional violation of Article VI, § 2, deprivation of property without due process of law, arises from the provisions of SDCL ch. 31–19, which variously provides for immediate taking (SDCL 31–19–23), vesting title in the State (SDCL 31–19–24), and appeal not delaying the vesting of title and possession in the State (SDCL 31–19–38).

In this regard, I point out a procedural error. All parties are proceeding under SDCL 31–19–10.1; however, Chapter 31–19 is a special procedure limited by its terms to acquisition of right-of-way and borrow pits. SDCL 31–19–20 is the only provision for use beyond the scope of the above and that is limited to land or materials, dirt, sand or gravel required for construction, reconstruction, maintaining or repairing. In my opinion, SDCL ch. 31–19 should be strictly construed, for it is there we find the provisions to which Justice Henderson refers and as I have enumerated above. These provisions make sense in the context of the condemnation of a highway right-of-way. One or two recalcitrants should not hold up an interstate highway system on a question of necessity for their particular segment. Justice Henderson's quixotic scenario, which suggests that the Transportation Commission is going to adopt a resolution of necessity to acquire a portion of the family farm is pure hyperbole.* In view of the corporation farming restrictions under SDCL ch. 47–9A, most farm land in South Dakota could be referred to as family farm land.

SDCL 31–29–61 et seq., which authorized this action, deals with highway beautifica-tion and advertising. SDCL 31–29–72 authorizes acquisition of nonconforming billboards by condemnation, but does not designate SDCL ch. 31–19 as the procedure to be used. In my view, by restricting Chapter 31–19 to only the acquisitions that it clearly covers, the State is required to use the general condemnation statutes, thus giving the property owner appropriate protection on the issue of necessity for taking. SDCL 21–35–20 provides for appeals in all cases under that chapter *in the same manner as in other civil actions.* Thus, it appears to me that in the event of a proposed taking which the property owner claims transgresses the bounds of propriety, the property owner would have the option to make application to this court for intermediate appeal. This court can give consideration to allowing intermediate appeal on that grounds only, thus delaying, if we so choose, the balance of the proceedings. SDCL 21–35–20 which provides that an appeal does not delay improvements, in my opinion, applies to appeals from a final adjudication.

While all parties tried the case under SDCL ch. 31–19, inasmuch as SDCL 31–19–21 provides that the chapter is cumulative to SDCL ch. 21–35, I would agree with the disposition of the majority opinion because appellant filed a direct appeal rather than petitioning for intermediate appeal.

HENDERSON, Justice (dissenting).

I respectfully dissent.

As Chief Justice Fosheim noted in *Bayer v. Johnson,* 349 N.W.2d 447, 450 (S.D. 1984): "State officials, including supreme court justices, are by constitutional mandate required to take an oath or affirmation to support the constitution of this state. S.D. Const. Art. XXI, § 3." Thus, if a patent constitutional dilemma arises in a case, although not raised by either party, this Court may decide that constitutional question on its own motion. *Id.* "Courts, above all, must jealously protect the integ-

---

* The subject of this action is a billboard. The use of eminent domain has admittedly been used on many other occasions. Our interstate highway system and the impoundments of our great Missouri River Dams would not have been possible without this tool.

rity of the constitution." *Id.* Failure to meet that which is constitutionally offensive is less than supportive. *Id. See also, Marbury v. Madison,* 1 Cranch 137, 177–80, 5 U.S. 368, 388–91, 2 L.Ed. 60, 73–74 (1803); *City of St. Louis v. Butler Co.,* 358 Mo. 1221, 1229–31, 219 S.W.2d 372, 378–79 (1949); *In re Clark's Estate,* 105 Mont. 401, 411, 74 P.2d 401, 406, 114 A.L.R. 496, 503–04 (1937); *State v. Sheldon,* 545 P.2d 513, 515–18 (Utah 1976) (Maughan, J., dissenting); *Stierle v. Rohmeyer,* 218 Wis. 149, 164, 260 N.W. 647, 654 (1935); and 4 C.J.S. *Appeal and Error* § 240, at 714–15 (1957). I view this case as another decision by this Court to extend the power of government over citizens and accordingly blanch. *See Krebs v. City of Rapid City,* 364 N.W.2d 128, 134 (S.D.1985) (Henderson, J., dissenting); *Moulton v. State,* 363 N.W.2d 405, 410 (S.D.1985) (Henderson, J., dissenting); *Eischen v. Minnehaha County,* 363 N.W.2d 199, 204 (S.D.1985) (Henderson, J., dissenting); *Byre v. City of Chamberlain,* 362 N.W.2d 69, 80 (S.D.1985) (Henderson, J., dissenting); and *City of Aberdeen v. Wellman,* 352 N.W.2d 204, 206 (S.D.1984) (Henderson, J., concurring in part and dissenting in part). To such jeopardized philosophy, I dissent so as to protect the rights of the people and safeguard the fundamental right of private ownership of land and its appurtenances.

A person cannot be deprived of property without due process of law. S.D. Const. art. VI, § 2. *See also,* S.D. Const. art. VI, § 20. The state, however, as sovereign, has the inherent power of eminent domain, *Darnall v. State,* 79 S.D. 59, 63, 108 N.W.2d 201, 203 (1961), but private property cannot be taken for public use without just compensation. S.D. Const. art. VI, § 13.

In the case at bar, the State Department of Transportation (DOT) sought to condemn appellants' billboard because it allegedly did not conform with the requirements of SDCL 31–29–63, et seq. Appellants, pursuant to SDCL 31–19–10.1, requested a hearing on the necessity of acquiring their billboard. The circuit court, by an order dated April 22, 1985, upheld DOT's finding of necessity for acquisition of the billboard. The constitutional dilemma herein lies in SDCL ch. 31–19.

SDCL 31–19–23 provides, inter alia:

In any proceeding in any court of the state of South Dakota which has been or may be instituted ... pursuant to a resolution of necessity for the acquisition of any land or easement or right-of-way in land for the public use, pursuant to §§ 31–19–1 to 31–19–20, inclusive, and chapter 21–35, the petitioner [the condemning authority] may file in the cause ... a declaration of taking ... declaring that said lands are thereby taken for the use of the state of South Dakota.

SDCL 31–19–24 provides that title to the lands specified in the above declaration of taking, vests in the State of South Dakota and such lands are deemed condemned and taken for the state's use, "and the right to just compensation for the same shall vest in the persons entitled thereto either on the date the decision is rendered at the [circuit court necessity] hearing provided in § 31–19–10.1 or the date the hearing is waived." SDCL 31–19–36 additionally provides:

In any case in which the state of South Dakota has taken possession of any real property during the course of condemnation proceedings and in advance of final judgment therein, and the state of South Dakota has become irrevocably committed to pay the amount ultimately to be awarded as compensation, it shall be lawful to expend moneys duly appropriated for that purpose in demolishing, moving, or selling existing structures on said land and in erecting public improvements or public works thereon; provided, that in the opinion of the attorney general, the title has been vested in the state of South Dakota.

Finally, SDCL 31–19–38 states: "No appeal in any cause under §§ 31–19–23 to 31–19–34, inclusive, nor any bond or undertaking given therein shall operate to prevent or delay vesting of title, interest or possession

to such lands in the state of South Dakota."[1]

Thus, under the above-cited statutes and the majority opinion herein, the following scenario is envisionable: Proceedings are instituted to condemn a portion of the family farm, business or billboard; a declaration of taking is filed; title to a portion of the family farm, business or billboard vests in the state and is deemed condemned and taken for the state's use; a circuit court upholds the necessity of the taking; an appeal therefrom is not allowable as a matter of right; the state takes possession of the family farm, business or billboard; compensation is determined but an appeal from the final judgment does not prevent or delay vesting of title, interest or possession; meanwhile, the state demolishes, moves, or sells the family farm, business or billboard and erects public improvements or public works; ultimately, this Court, on proper appeal, reverses the necessity determination but the property has changed, inasmuch as the structures of the family farm, business or billboard have been razed, moved, and/or sold; the taking was unlawful but the owners cannot be returned to the status quo. Such a scenario is procedurally, legally, and realistically possible[2] and probable under the rationale of the majority opinion. The above statutes, in combination, permit an unlawful taking of property without due process of law. A vesting of title by bureaucratic edict, without recourse to appeal, is a violation of this state's due process clause. A family should not have to give up its home, farm, business or billboard simply because some government bureaucrat decides that it is "necessary" to take the property in question and files a declaration of taking. Shades of the American Revolution! Due process entails more protection from unlawful takings than the above statutory

scheme provides. Our state statutes on the condemnation of property are constitutionally ill. The state constitution provides: "No person shall be deprived of life, liberty or property without due process of law." S.D. Const. art. VI, § 2.

As for the majority's determination that a circuit court decision permitting condemnation is not a final judgment from which an appeal may be taken, I also dissent. Numerous courts and jurisdictions, for various reasons, have permitted such appeals. *See*, e.g., *Loughran v. United States*, 317 F.2d 896 (D.C.Cir.1963); *Van Dyke v. Midnight Sun Mining & Ditch Co.*, 100 C.C.A. 503, 177 Fed. 85 (9th Cir.1910); *1.67 Acres of Land, Etc. v. State*, 225 A.2d 763 (Del. 1967); *Couse v. Canal Authority*, 194 So.2d 301 (Fla.Ct.App.1967); *McLean v. District Court of Eighth Judicial District*, 24 Idaho 441, 134 P. 536 (1913); *County of Blue Earth v. Stauffenberg*, 264 N.W.2d 647 (Minn.1978)[3]; *Park County v. Miller*, 117 Mont. 157, 159 P.2d 358 (1945); *Erie County Water Authority v. Western New York Water Co.*, 281 A.D. 1070, 121 N.Y. S.2d 374 (1953); *Moses v. State Highway Comm'n*, 261 N.C. 316, 134 S.E.2d 664 (1964), *cert. denied*, 379 U.S. 930, 85 S.Ct. 327, 13 L.Ed.2d 342 (1964); *Pittsburgh, C. & T.R. Co. v. Tod*, 72 Ohio St. 156, 74 N.E. 172 (1905); *Petition of Philadelphia, M. & S. St. Ry. Co.*, 203 Pa. 354, 53 A. 191 (1902); *Harper v. Trenton Housing Authority*, 197 Tenn. 257, 271 S.W.2d 185 (1954); and *State v. Oshkosh, A. & B.W. R. Co.*, 100 Wis. 538, 77 N.W. 193 (1898).

The tendency of modern jurisprudence is to extend the right of appeal in interlocutory matters when the public interests require it (that is, when the economic loss to the public by compelling the appellate courts to waste their time over

---

**1.** SDCL 21–35–20 also provides that appeals in condemnation cases shall not prevent or delay the work or improvements involved.

**2.** Law books are full of cases where homes and neighborhoods are condemned and eliminated by the power of eminent domain for the "public good." These run the gamut from municipal acquisitions for improvements to federal interstate highway projects. *See, generally, Nichols*

*on Eminent Domain.* I write not of the quixotic but of the real world.

**3.** Efficiency and economy should not be vaulted, in degree of importance, over the right to possess and own land; therefore, I disagree with the majority opinion's treatment of the *Blue Earth* decision.

points of law which may never be necessary to a final decision of a litigated case is less than will be caused by compelling trial courts and parties litigant to waste their time over the trial of issues of fact which may be rendered nugatory by an adverse decision of the appellate court on points of law), public policy requires that the appellate courts must run the risk of wasting their time. The long drawn out trial of a land damage case is a serious economic waste, if, after the verdict is reached, the appellate court decides that the petitioner had no right to condemn the land in question at all; and consequently it is held in some jurisdictions that an order of condemnation may be appealed from at once, and the questions of law upon which the validity of the taking depends finally determined before the trial upon the measure of compensation.

6 J. Sackman, *Nichols on Eminent Domain*, § 26.32, at 26–247, 248 (rev. 3rd ed. 1985).

Under SDCL 15–26A–3(4), an appeal to this Court may be taken from a "final order affecting a substantial right, made in special proceedings...." Condemnation proceedings are obviously special proceedings and the circuit court's decision permitting condemnation is the predominant and controlling issue. When the necessity of the condemnation is upheld, or a declaration of taking is filed, title vests in the state and the land is deemed condemned and taken for the state's use, SDCL 31–19–24; the state may thereupon demolish, move, or sell existing structures and erect public improvements and works, SDCL 31–19–36; and any appeal does not prevent or delay vesting of title, interest, or possession of the land by the state, SDCL 31–19–38.[4] To repeat, the statutes are constitutionally ill. Via these statutes, the circuit court's decree permitting condemnation, in effect, establishes the condemnor's title and possession. As to these aspects of the condemnation proceeding, it is a final decree. *Petition of Philadelphia*, 53 A. at

192. The order or decree permitting condemnation affects substantial rights because title and possession vests in the state and the possibility of demolition and erection of structures closely follows. As the scenario above depicts, these events can transpire and the status quo be irreparably changed before this Court reviews the propriety of the taking. Perhaps, like John the Baptist, I am a cry in the wilderness. Perhaps, also, like John the Baptist, my message rings true.

From the day of the issuance of the Magna Carta, June 15, 1215 A.D., to the pioneer cry of "Wagons West," free men have longed to call a piece of land or chattel their very own. This longing, this spirit, this right, is of ancient tenure. It is deeply ingrained and embedded in the American way of life. When a government can take and/or destroy property—acquire title—and then advocate "you have no appeal," my blood begins to boil and my sense of justice stiffens against such absolute state authority. Therefore, I would hold, under the purview of SDCL 15–26A–3(4), that an appeal lies by right from a circuit court order affirming the necessity of the taking and permitting condemnation. A government must respect its citizens' rights; if it does not, the citizens cannot respect the government; and, if it does not, government cannot respect itself. Therefore, I express my dissidence to absolute state authority, wherever it may be found, and, accordingly, I respectfully dissent.

---

**4.** SDCL ch. 31–19 is additional and cumulative to SDCL ch. 21–35.